TURQUETT v. McMURRAIN.

Opinion delivered November 17, 1913.

1. BOUNDARIES—PAROL AGREEMENT—STATUTES OF LIMITATION.—Where there is doubt or uncertainty, or a dispute as to the true location of a boundary line, the parties may, by parol, fix a line, which will at least, when followed by posssession with reference to the boundary so fixed, be conclusive upon them, although the possession is not for the full statutory period. (Page 203.)

2. INSTRUCTIONS—CONFLICTING INSTRUCTIONS.—It is error to give inharmonious and conflicting instructions. (Page 203.)

3. ADVERSE POSSESSION—CLAIM OF OWNERSHIP. — Where appellant claimed a strip of land and had possession of the same for over seven years, the title would become vested in him unless he unconditionally thereafter acknowledged the title to be in B., from whom he later contracted to rent the land. (Page 203.)

Appeal from Howard Circuit Court; *Jeff. T. Cowling,* Judge; reversed.

STATEMENT BY THE COURT.

This is a suit in ejectment by appellant against the appellee for a strip of land about seventy-five feet wide at one end, and about forty-five feet wide at the other end, along the section line between sections 34, in township 9 south, range 27 west, and section 3, in township 10 south, range 27 west, also the township line running east and west between said sections. The complaint alleged that appellant was the owner of the southwest quarter of the southwest quarter of section 34, township 9 south, range 27 west, including all the enclosed land, and which, in addition to the above, included the strip in controversy. It also alleged that something over twenty years ago, the line between the land of appellant and the appellee was surveyed and established by I. M. Puckett, the county surveyor of Howard County, "with the knowl-

edge, consent and approval'' of the appellee, and had been recognized by the appellee, as well as by the appellant, as the line between their land for more than twenty years; that the parties, fifteen years ago, had built a partnership fence on the line thus established; that appellant had been in the adverse possession of the lands claimed by him for more than twenty years. He alleged that since December 31, 1912, appellee had fenced and taken possession of the strip on the south boundary of appellant, and had been in the' unlawful possession thereof since that time.

The appellee denied that any line was ever established between sections 3 and 34 that was ever acquiesced in until the year 1912, at which time the line was run out by the surveyor of Howard County, and the line established; that in establishing said line, appellant's fence was found to be over the south boundary line between sections 3 and 34, and enclosing certain land in section 3 belonging to appellee, which appellee had always owned, and had the right to the possession of; that appellee owned, and always claimed, all of the northwest quarter of the northwest quarter of section 3, in township 10 south, range 27 west, and appellant was the owner of the southwest quarter of the southwest quarter of section 34, township 9 south, range 27 west, claiming to the section line, and no further; that the land enclosed by appellant belonging to appellee was not held by him under the claim of ownership, but only believing that he was the owner of the land in section 34; that appellant always acknowledged the right of ownership of appellee of all land in section 3 adjoining appellant's land in section 34.

The appellant testified, in part, as follows:  He owned eighty acres of land in sections 33 and 34.  Appellee's land lay south of appellant's east forty, and, as appellant supposes, is in section 3.  He considered the land he had enclosed as his by description in his deed. ' He claimed the land south of the line established by Surveyor Huddleston as a part of section 34, and had never claimed any land in section 3.  Appellant's land had been under

fence about twenty-two years. Appellee and appellant made a lane through there for road convenience. The fence was placed about six feet north of appellant's line. This fence remained there about eight years. Appellant and appellee then decided to enclose the road and make a partnership fence between them, which they did. The line between appellant and appellee was first established by Puckett, the county surveyor, appellee and appellant being present. Each left six feet space for the road, and they afterward enclosed the road and built a partnership fence on the line established by Puckett. That has been about fifteen years ago. He had been claiming the land to the line as established by Puckett ever since. Had always intended to claim to where this line was run.

The appellee, in part, testified as follows: "I have always contended for the land that was to the section line and Mr. Turquett's fence. We put the fence up there, not knowing just where the section line was. I didn't know, and I told him that I didn't know whether it was correct or not. He told me that he didn't know. It was my understanding with him that he claimed to the section line. At the time the wire fence was put up, there was no understanding or agreement that it was to be the line unless it was the section line. It has always been the agreement that the true line should govern as between us. There was an agreement between Mr. Turquett and myself in March, 1912, about the strip of land in controversy. At first he wanted to buy the land, but I would not sell it to him. He then rented it from me, and agreed to pay me the third and fourth of the 1912 crop, and to move the fence, or help me move it, when we got time.

The appellant further testified that he never proposed to buy the strip of land in controversy from the appellee. He rented the land from appellee after Huddleston made his survey in this way (quoting appellant's language): "I said (to appellee), 'You are claiming according to the Huddleston line, and I am claiming according to the Puckett line.' I said, 'I'll make you this proposition: I will rent this land from you, and when

this thing is finally settled, if you get the land, I will pay you rent, and if I get the land, I don't owe you anything.' With that condition, I rented the land.''

The above is enough of the testimony to show the theory upon which the cause was submitted to the jury.

The court, among other instructions, gave, at the instance of appellant, the following:

''2. You are further instructed that where there is doubt or uncertainty or a dispute as to the true location of a boundary line, the parties may, by parol, fix a line which will, at least, when followed by possession with reference to the boundary so fixed, be conclusive upon them, although the possession is not for the full statutory period; and if you believe from the evidence in this case that the true location of the line between plaintiff and defendant was in doubt or uncertainty, and that the parties agreed upon a line between them, and in furtherance thereof, put a joint fence thereon, and that the parties took possession of the land and cultivated same up to the fence so constructed, then you are instructed the line so fixed is conclusive upon the parties, whether right or wrong, although the possession of the land after agreement is not for the full statutory period of seven years.''

The court refused to give prayer for instruction No. 9, as follows: ''If you find from the evidence that the plaintiff held possession and claimed ownership of the strip of land in controversy for seven years before the defendant took possession about the first of the present year, this would vest title in the plaintiff, if adverse, and the testimony as to the alleged rent contract can only be considered to determine whether the possession of the plaintiff prior to the time of taking possession by the defendant was adverse to the right or claim of the defendant, and can not be considered at all unless you find that the rent contract was made unconditionally.''

But, over the objection of appellant, the court amended the above instruction by striking out the words: ''and can not be considered at all unless you find that the

rent contract was made unconditionally," to which appellant excepted.

The court granted appellee's request for instruction No. 1, to the effect that the appellant could only acquire title to the strip of land in controversy by reason of open, continuous, notorious, hostile and adverse possession of the same for a period of seven years, and claiming it all the time as his own, and not intending to claim at any time only to the true boundary line between appellant and appellee, "if the jury found that the Puckett survey was not the true line."

And, further, in appellee's prayer for instruction No. 2, the court told the jury: "So, if the jury find in this case that the plaintiff, during the time that he has had the land enclosed, only intended to claim to the true boundary line, then his possession would not be adverse within the meaning of the law, and your verdict will be for the defendant."

Exceptions were duly saved to the rulings of the court in the giving and refusing of instructions, and from a judgment in favor of the appellee, appellant prosecutes this appeal.

*W. P. Feazel* and *W. C. Rodgers,* for appellant.

1. The court correctly instructed the jury that if appellant claimed to the fence agreed upon by the parties as the line for seven years, he would be entitled to recover. 101 Ark. 409-415. The proposition that a fixing of the lines by mutual consent is binding is also the law, even where the statute of seven years has not run. 96 Ark. 168-170.

2. When the court struck out of instruction 9, requested by appellant, the words, "and can not be considered at all, unless you find that the rent contract was made unconditionally," it practically eliminated the life of the instruction, and, in effect, declared that an agreement to pay rent conditional upon the ownership of the land being in appellee could be regarded as showing the character of the possession of appellant. Title being in

appellant, an offer to pay rent if it should not be in him would be no offer.  Moreover, appellant having acquired title by prescription under a mutual agreement as to the correct boundary, and agreement to pay rent on his own land would be without consideration and void.  98 Ark. 160-166; 98 Ark. 200-202; 68 Ark. 276-279; 66 Ark. 26.

3.  Instruction No. 1, given at appellee's request, is in conflict with instructions given for the appellant, and ignores the uncontradicted testimony of appellant, and Clyde Turquett, as well as of appellee himself, to the effect that they agreed on the line of the Puckett survey. This instruction and instruction 2, given for appellee, are also abstract and not justified by the evidence.

The testimony of the witness, Clyde Turquett, is clear and unequivocal that the fence built on the Puckett line was to be the boundary between parties by agreement.  It is reasonable, probable and unimpeached, and the jury had no right to disregard it.  67 Ark. 514-516; 78 Ark. 234-237; 72 Ark. 471-473; 80 Ark. 396-399; 74 Ark. 12-15; 61 Ark. 549-555; 75 Ark. 406-409; 82 Ark. 252-259; 83 Ark. 426, 427; 84 Ark. 333, 334; *Id.* 368-375; 96 Ark. 500-504.

*Steel, Lake & Head* and *Sain & Sain,* for appellee.

1.  The court properly amended instruction 9, requested by appellant, by striking out the latter clause thereof, because any declaration made by appellant as to his possession or claim of title, could be used for the purpose of showing the intention with which he was holding possession.

2.  The jury were correctly charged by the court, on its own motion, to the effect that where one, through mistake as to the true boundary line, takes possession of the land of an adjacent owner intending to claim only to the true boundary, such possession is not adverse, and does not divest title out of the owner though continued for more than seven years, etc.  83 Ark. 74; 100 Ark. 555; 101 Ark. 414.

3.  Where one has acquired title by adverse pos-

session, it can not be divested by mere recognition of title in another; but such recognition may be admitted in evidence to' show that the holding of the claimant was not adverse, and to show the character of his possession.  96 Ark. 190; 101 Ark. 413, 414; 80 Ark. 576; *Id.* 444.

WOOD, J., (after stating the facts).   One of the issues presented by the pleadings was as to whether or not appellant and appellee had agreed upon a boundary line between their adjoining lands.   The court correctly presented this issue in instruction No. 2, given at the instance of the appellant.   This instruction was in accord with the rule announced in *Payne* v. *McBride*, 96 Ark. 168.   But, in instructions given at the instance of appellee, the court made the appellant's right of recovery depend solely upon whether or not he had occupied the land by adverse possession for seven years, intending to claim the same as his own, regardless of whether or not the line established by the Puckett survey was the true boundary between them.

One ground of appellant's objection to these instructions, given at the instance of the appellee, was that they were in conflict with instructions given at the request of the appellant, and ''because they were confusing to the jury, in connection with the instructions given for appellant.''

These instructions, given at the instance of the appellee, ignored the contention of the appellant as to the boundary being established by parol agreement, and the court erred in not harmonizing the instructions.

The court erred in modifying the appellant's prayer for instruction No. 9, by striking out the words, ''and can not be considered at all, unless you find that the rental contract was made unconditionally.''   The testimony of the appellee, it is true, tended to show that appellant promised to pay rent for the year 1912, and that this promise was made without condition, which would tend to show a recognition of the title to the property in the appellee, and that appellant agreed to occupy the same as his tenant. . But the testimony of the appellant, on

the other hand, tended to show that he agreed to pay rent to the appellee for the year 1912 only upon condition that it should be afterward determined that appellee was the owner of the strip of land in controversy, which fact appellant at that time was controverting. Now, the court, by striking out the words mentioned, permitted the jury to consider the agreement upon the part of the appellant to pay rent for the year 1912 as tending to show an unconditional recognition of appellee's claim of ownership in the land in controversy. This was highly prejudicial to appellant, for, according to his testimony, the agreement to pay rent was only by way of a compromise or settlement of the issue between them as to the occupancy of the land for the time being, that is, until it should be legally determined as to who was the owner of the land in dispute. In other words, the declarations of appellant, as he contends, were in the nature of a temporary compromise of that issue, and not at all a recognition of appellant's claim of ownership.

The striking out of the words objected to deprived the appellant of the benefit of this contention before the jury. The testimony of the declarations of appellant, tending to show his agreement to rent the land, would be competent only on the issue of adverse possession, provided they were not made, as he claimed, by way of temporary compromise of a matter that was then at issue between him and the appellee.

We find no substantial error in the other rulings of the court, but for those indicated, the judgment must be reversed and the cause remanded for a new trial.