## 9001

### PAINTER v. WESTERN UNION TELEGRAPH CO.

(84 S. E. 293.)

TELEGRAM. MISTAKE IN TRANSCRIBING OR TRANSMITTING. EVIDENCE. WILFULNESS. CHARGE.

1. TELEGRAMS—MISTAKE.—A telegraph company is liable for damages growing out of its mistake which occurred in transmitting a message, or out of an erroneous publication of the message by an unauthorized person to whom the company entrusted it for delivery to addressee.

2. TELEGRAPHS AND TELEPHONES—MESSAGES—TRANSMISSION—ERRORS— DELIVERY—UNAUTHORIZED PERSON.—Where a telegram announcing the finding and safety of plaintiff's missing son was sent to her, and in transmission was so changed as to make it read that the child was dead, defendant could not relieve itself from liability because it intrusted the message for delivery to plaintiff to an unauthorized person.

3. TELEGRAMS—MISTAKE—NONSUIT.—Where an inference that a message was deliberately changed in transmission may be drawn from the evidence, a nonsuit of action for punitive damages was properly refused.

4. TELEGRAPHS AND TELEPHONES—MISTAKES IN TRANSMISSION—WILFULNESS—EVIDENCE.—Where, though a receiving clerk in defendant's telegraph office spelled back all the words in a message announcing that plaintiff's missing son was at the home of the sender of the message, it was so sent and delivered as to read that the boy was dead, the facts were sufficient to justify submission of an issue of wilfulness and a recovery of punitive damages.

5—100

5. TELEGRAMS—MISTAKE—EVIDENCE.—There is no presumption that the agent of a telegraph company receiving a message over a telephone line understood it or was negligent in failing to understand it.

6. TELEGRAPHS AND TELEPHONES—MESSAGES—ERROR IN TRANSMISSION—INSTRUCTIONS.—An instruction for failure to correctly transcribe and transmit a message without satisfactory explanation is some evidence on which the jury might base a verdict for punitive damages was erroneous under the rule that, before such damages could be recovered, plaintiff was bound to show that the receiving agent understood the message or was negligent in failing to understand it; there being no presumption either that such agent understood it or was negligent in failing to do so.

7. TELEGRAMS—CHANGE IN MESSAGE—EVIDENCE.—In an action against a telegraph company for damages arising from its mistake either in transcribing a message telephoned to its office, or in thereafter transmitting it, mere failure to correctly transcribe and transmit the message is not sufficient evidence upon which to base a verdict for punitive damages.

8. TELEGRAPHS AND TELEPHONES—REQUESTED CHARGE—FORM.—Where, before a telegram was actually delivered, plaintiff learned its contents from a third person, a requested charge that the complaint alleged that the defendant telegraph company delivered to plaintiff the following message: "Bob is dead"—which should have read: "Bob is here," and by reason thereof plaintiff was caused to suffer mental anguish and physical injury, and if the jury found that the telegraph company did not deliver such a message to plaintiff, then she could not recover, was properly refused, since it was likely to lead the jury to believe that the paper, and not the information, was the thing in issue.

9. TRIAL — INSTRUCTIONS — OMITTING ISSUES — TELEGRAM — ERROR IN TRANSMISSION.—In an action for damages from an error in the transmission of a telegram, a requested charge that the action was not one for negligence in disclosing the contents of a telegram, and that if the jury found that the injury to plaintiff, if any, was caused by a third party disclosing such contents, and not through defendant's negligence in delivering the message, then plaintiff could not recover, etc., was properly refused as eliminating the question of negligence in the transmission of the message.

10. TELEGRAMS—CHARGE.—A request to charge ignoring an alleged ground for recovery in its statement of the issues is properly refused.

11. TRIAL—INSTRUCTIONS—CHARGE ON FACTS.—Where the Court, in stating the issues, charges that it was the contents of the telegram which was changed in transmission, the effect of the contents on plaintiff which caused the trouble was not objectionable as a charge on the facts.

12. TELEGRAPHS AND TELEPHONES — ERROR IN TRANSMISSION — INSTRUCTIONS.—An instruction that, if defendant telegraph company chooses

to receive for transmission a message over the telephone to an agent in its office, then they should be held to the same accountability as ·if the message was written and placed in its hands, etc., was erroneous.

Before RICE, J., Greenville, Fall term, 1913.    Reversed.

Action by Laura E. Painter against Western Union Telegraph Company.    From judgment for plaintiff, defendant appeals.    The facts are stated in the opinion.

*Messrs. Geo. H. Fearons, John Gary Evans* and *Haynsworth & Haynsworth,* for appellant.    *Mr. Evans* cites: *The delivery of the written message essential:* Jones Telegraph and Tel. Cas. 292; 37 Cyc. 1683; 120 Fed. 533; 45 Mo. App. 453.    *Proof of receipt of message by company:* ·90 S. C. 503.    *Only liable for· negligence:* 37 Cyc. 1666, 1670; 19 S. C. 84; 82 S. C. 572; 83 S. C. 25.

*Messrs. William H.· Earle* and *James H. Price,* for respondent, submit: *Proximate cause for jury:* 84 S. C. 67; 77 S. C. 286; 62 S. C. 138.    *Punitive damages should have been left to jury:* 93 S. C. 182; 92 S. C. 214; 72 S. C. 354; 65 S. C. 430; 84 S. C. 67; 96 S. C. 398.    *Charge sustained by:* 93 S. C. 182.    *Receipt and transmission of message:* 78 S. C. 424; 90 S. C.· 506.

February 13, 1915.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for actual and punitive damages for error in the transmission of a telegram from Charleston to Greenville.    There is testimony that Bob Painter, a little boy, the son of the plaintiff, with a son of one of the witnesses, Mr. Gillespie, ran away from their parents in Greenville and went to Charleston.    Bob Painter had a

FOOTNOTE.—See note in 56 L. R. A. 745, as to telegrams given over telephone.

sister, Mrs. Moody, who lived with her husband, Leon
Moody, in Charleston. It was suspected that these boys
had gone to Charleston and Mrs. Painter sent a telegram
to Mr. Moody about her son. From the Charleston office
this message was telephoned to Mr. Moody at his home,
which was about a mile from the telegraph office. Mr.
Moody testified that he telephoned an answer as follows:
"Bob is here. Will keep him until hear from you. Leon."
The agent of the telegraph company wrote down the mes-
sage as follows: "Bob is dead. Will keep him until hear
from you. Leon." The message as thus written was sent
to Greenville. Mr. Gillespie was uneasy about his son and
went to see the plaintiff about it. Mr. Painter was not at
home, and after a conference between Mr. Gillespie and
Mrs. Painter it was agreed that Mr. Gillespie would go
to the telegraph office in Greenville and send another mes-
sage to Mr. Moody in Mrs. Painter's name. Mr. Gillespie
went to the telegraph office and started to write the tele-
gram, whereupon the telegraph operator informed him that
he had received a message for Mrs. Painter and was wait-
ing for a messenger boy to deliver it, but inasmuch as
Mr. Gillespie was also interested in the matter he would
turn over the message to him if he (Gillespie) would under-
take to deliver it to Mrs. Painter. Mr. Gillespie under-
took to deliver it. The agent of the company then opened
the telegram, read it to Mr. Gillespie and turned over the
message to him for delivery to Mrs. Painter. On his way
back to deliver the message, he stopped at a street corner
to wait for a car; a neighbor, Mr. Eskew, came up to Mr.
Gillespie and asked if there was any news of the boys,
and Mr. Gillespie told him that Bob Painter was dead. Mr.
Eskew then called up Mr. Perry, another neighbor, and
told him that Bob Painter was dead, and about the tele-
gram. Mr. Perry then went over to the home of the
plaintiff and called Mr. Painter out and told him about the
telegram announcing the death of his son. While they

were talking Mr. Gillespie came up with the telegram. Mr. Painter did not believe the statement in the telegram and went off and called up Mr. Moody over the long distance telephone and in that way learned that there was an error in the telegram and that Bob was not dead, but safe in Mr. Moody's home. There is testimony that while Messrs. Painter, Gillespie and Perry were talking another son of the plaintiff overheard the conversation and in that way learned the contents of the telegram and went back into the house and told his mother, the plaintiff, about the telegram and that Bob was dead.

This action is for the transmission and delivery of the erroneous telegram.

The defendant in its answer made a general denial, and some other defenses. The other defenses were either withdrawn or there was no attempt made to prove them. The case was tried on two issues. First, did the appellant ever receive the correct message? Second, did the appellant deliver the message? The cause was tried on Circuit and resulted in a judgment in favor of the plaintiff for five hundred dollars.

There were twelve exceptions. The seventh and eighth were withdrawn. The others will be considered in order.

Exception 1. "In that his Honor erred in refusing to grant defendant's motion for a nonsuit as to the cause of action for actual damages for the reason that there was no testimony tending to show that the suffering on the part of the plaintiff, if any, was the direct, natural and proximate result of any delict on the part of the defendant.

"(1) Because the undisputed evidence shows that the telegram was never delivered to the plaintiff until the same had been corrected to read as sworn to by the sender.

"(2) Because there is no evidence tending to show that the telegram set forth in the complaint was delivered to the plaintiff, but that the information received by her came

from a source independent of the company, constituting an intervening efficient cause of the injury to the plaintiff, if any, beyond the control of the defendant."

There is some question as to whether Mr. Gillespie was the agent of Mrs. Painter or the telegraph company. We need not enter upon that question. There was evidence that the appellant had undertaken to deliver a message. That it sent Mr. Gillespie to Mrs. Painter with the message. That he went to her house and spoke the message in the presence of two members of the family and it was delivered by one of them to Mrs. Painter. It needs no authority to show that it would be error to hold that a telegraph company could relieve itself from all liability for a telegram by delivering it through an unauthorized person. There would then be no liability for nondelivery, because it was delivered and no liability for error, because the person who delivered it was unauthorized. Whether the boy heard the conversation or not was a question of fact with which this Court has nothing to do. This subdivision is overruled.

(2) What has just been said disposes of this subdivision.

Exception 2. "In that his Honor refused to grant a nonsuit as to the cause of action for punitive damages. The error being that there was no testimony tending to show wilfulness, wantonness, or reckless disregard of the plaintiff's right by the defendant company."

The motion for nonsuit could not have been granted. The witness, Moody, testified that the message was repeated to him by the operator and the words spelled. "Q. I will ask you this much, did she spell the words back to you? A. Yes, sir; she spelled back the whole business." This testimony was capable of two interpretations, *i. e.*, the operator exhausted every effort to avoid a mistake and

failed, or she deliberately changed the word "here" to the word "dead." Which was true was a question for the jury.

This exception is overruled.

Exception 3. "In that his Honor erred in charging the jury as follows: 'For failure to correctly transcribe and transmit a telegraph message without satisfactory explanation is some evidence upon which the jury may base a finding of a verdict for punitive damages.

The error being that said charge is an incorrect proposition of law, and while it may be regarded as some evidence of negligence, the mere fact that a mistake was made by the telegraph company in transmitting and transcribing a message is not sufficient evidence upon which to base a verdict for punitive damages."

This exception must be sustained. Whatever the rule may or may not be in regard to a change in a telegram in transmission after it reaches the telegraph office, the case of *Cameron* v. *Tel. Co.,* 90 S. C. 503, 74 S. E. 929, is full authority for the proposition that before a party can recover for a mistake in a telegram, he must show that the agent who received a message understood the message or was negligent in failing to understand it. There is no presumption that the defendant's agent understood it or was negligent in failing to understand it.

This exception is sustained.

Exception 4: "In that his Honor erred in refusing to charge without modification the following request of the defendant, to wit: 'The complaint alleges that the defendant company delivered to Laura E. Painter the following message: "Bob is dead; will keep him until hear from you," and by reason thereof plaintiff was caused to suffer mental anguish and physical injury. If you find that the telegraph company did not deliver such a telegram to the plaintiff then I charge you she cannot recover in this case, and your verdict should be for the defendant.' The error being that said request was a sound

proposition of law applicable to the case, and the modification of his Honor destroyed the effect thereof."

This exception is overruled. In this case it was likely to lead the jury to believe that the paper and not the information was the thing in issue.

Exception 5. "In that his Honor erred in refusing to charge without modification the second request to charge on the part of the defendant, to wit: 'I charge you that this is not an action against the defendant company for negligence in disclosing the contents of a telegram, and you are not to consider it as such. If you find that the injury to the plaintiff, if any, was caused by a third party disclosing the contents of a message, and not through any negligence on the part of the company in delivering the message as set out in this complaint, then, under the law, the plaintiff cannot recover, and your verdict should be for the defendant.' The error being that the same was a correct proposition of law applicable to the case, and the modification of his Honor destroyed the effect of the request."

This exception is overruled, because it eliminated negligence in the transmission of the telegram.

Exception 6. "In that his Honor erred in charging the jury as follows: 'It was the contents of the telegram, the effect of the contents upon Mrs. Painter, which caused the trouble.' The error being that the same was a charge upon the facts, and in violation of the law of this State."

This exception is overruled. His Honor was stating the issue merely.

Exception 9. "In that his Honor erred in charging the jury as follows: 'If the telegraph company chooses to receive for transmission a message over the telephone to an agent in their office, then they should be held for the same accountability as if the message was written and placed in their hands. They are held

to the same responsibility as they would be if the parties were in the office and writing out the telegram.' The error being that said proposition was not a correct statement of the law as to the liability of telegraph companies receiving messages over the telephone."

This exception is sustained under the case of *Cameron v. Tel. Co.,* 90 S. C. 503, 74 S. E. 929, for the reasons stated under exception 3.

Exception 10. "In that his Honor erred in refusing to charge the eighth request on the part of the defendant, as follows: 'I charge you that there is no evidence in this case tending to show that the telegram complained of in the complaint was ever delivered to the plaintiff, Mrs. Laura E. Painter, until the same had been corrected, and your verdict should be for the defendant.' The error being that said request contained a correct proposition of law applicable to the case."

Exception 11. "In that his Honor erred in refusing to charge the ninth request on the part of the defendant, which is as follows: 'I charge you there is no evidence upon which you can base punitive damages, and you should not consider such damages in making up your verdict.' The error being that said request contained a correct proposition of law applicable to the case."

These exceptions are overruled for the reasons already stated. The judgment appealed from is reversed and the case remanded for a new trial.

MR. JUSTICE GAGE, *concurring.* I concur, except as to there being any testimony tending to show wilfulness. I think there was no such testimony.