## OSBORNE *v.* HITTSON.

### Opinion delivered May 3, 1915.

1. VERDICT—SUFFICIENCY OF EVIDENCE.—In order to uphold a verdict on appeal there must be some substantial evidence to support it.

2. EVIDENCE—DUTY OF JURY TO CONSIDER.—When the testimony of a disinterested witness is both reasonable and consistent, the jury has no right arbitrarily to disregard it.

3. SALES—HOGS—CHOLERA—EVIDENCE.—In an action to recover the purchase price of hogs sold; *held,* that defendant's testimony that the hogs were infested with cholera when received by him, was uncontradicted and a judgment rendered upon a verdict awarding plaintiff damages will be reversed.

Appeal from Lee Circuit Court; *J. M. Jackson,* Judge; reversed.

*Roleson & McCulloch,* for appellants.

The testimony of the three veterinary surgeons shows that it was impossible for the hogs to have contracted the cholera after they left Green Forest, but that they must have been infected with it at the time they were shipped. This testimony is undisputed, and the jury had no right arbitrarily to disregard it. 57 Ark. 413; 96 Ark. 504.

This court will reverse where the verdict is so clearly against the weight of the evidence as to shock the sense of justice. 34 Ark. 632; 70 Ark. 384; 10 Ark. 492.

*Troy Pace,* for appellees.

The jury were not compelled to accept the testimony of the veterinary surgeons as true; but in weighing their testimony and its credibility, the jury were required under the law to take into consideration all the evidence in the case, whether their testimony conformed to the facts as established by the evidence, and how far such evidence seemed to be true, in the light of their own common sense, experience and knowledge of the subject about which such evidence was given. 87 Ark. 257; 100 Ark. 518; 50 Ark. 520; 108 Ark. 392.

As to whether or not the hogs had cholera when shipped, was a question of fact which the jury determined adversely to appellants upon conflicting testimony. It

ought to be sustained even though the court might have found otherwise, or be of opinion that it is against the preponderance of the evidence. 19 Fed. 405; 35 Fed. 711; 36 Fed. 657; 23 Ark. 50; 18 S. W. (Ark.) 172; 157 Fed. 656; 19 Ark. 117; 51 Ark. 495; 55 Ark. 31; 90 Ark. 23; 111 Ark. 309.

On appeal, the testimony will be considered in the light most favorable to the verdict. 89 Ark. 534.

HART, J. W. S. Hittson and F. M. Seitz, partners doing business under the firm name of Hittson & Seitz, instituted this action against L. M. Osborne, W. C. Osborne and Albert Starratt to recover the price of a carload of hogs which the plaintiffs alleged they had sold to the defendants.

The defendants in their answer averred that the contract of sale provided that the hogs should be free from cholera, and that the hogs were infected with cholera when they received them. The jury returned a verdict for the plaintiffs for the price of the hogs, and the defendants have appealed.

The facts are substantially as follows: The plaintiffs were dealers in stock and hogs at Green Forest, Carroll County, Arkansas, and the defendant L. M. Osborne owned a farm in Lee County, Arkansas. In December, 1912, he purchased a carload of hogs from the plaintiffs, and the contract of sale provided that the hogs should be free from cholera or other infectious diseases. The hogs were shipped by the plaintiffs at Green Forest on the 9th day of December, 1912, and arrived at Marianna, in Lee County, about 12 o'clock on the 11th of December. They were at once loaded in wagons and carried to the farm of the defendant Osborne, where they arrived about 7 o'clock P. M. on the evening of December 11.

Albert Starratt testified that he was manager of the Osborne farm in Lee County, but that he had no interest in the farm or hogs purchased by Osborne from the plaintiffs; that he went to Marianna with wagons to haul the hogs to the Osborne farm on the day of their arrival; that one of the hogs was practically dead on arrival, and died

on the way home; that four or five others were sick; that when he examined the hogs the next morning, he discovered that three more were dead; that at that time he had never had any experience with cholera, and did not know what was the matter with the hogs; that at the time there were a great many others hogs on the Osborne farm, and that all of them were healthy and free from disease; that the hogs shipped by the plaintiffs continued to get sick and to die to such an extent that a veterinary surgeon was called in and that he declared that the hogs had cholera; that the disease was communicated to the other hogs on the place, and that most of the hogs shipped by the plaintiffs, as well as the other hogs on the place, finally died of cholera.

The witness stated that he was satisfied now that the hogs had the cholera when they reached Marianna, and that he based this opinion on the knowledge of the disease he had acquired since their arrival; that he did not know at the time that they had cholera, but since that time has observed hogs pronounced to have cholera by veterinary surgeons, and that the hogs shipped by the plaintiffs, on their arrival at the farm, were affected in the same way as cholera hogs.

Three veterinary surgeons testified that they had had experience with hog cholera, and that it was impossible for the disease to develop under seven days; that it requires from seven to twenty days after the hog has the germ of cholera in its system before the disease becomes apparent; that if a car of hogs was shipped from Green Forest on December 9, and arrived at Marianna on December 11, and the hogs began to die on the next day, it would be impossible for them to have been healthy and free from cholera at the time they were shipped; that they could not have become infected in that length of time.

On the part of the plaintiffs, it was shown that hog cholera was prevalent in certain parts of Lee County at the time the hogs arrived there; but it was not shown that the hogs in question were exposed to that disease in Lee County. Both of the plaintiffs testified that the hogs in

question had been purchased in Carroll County and that some of them were purchased four days and other six days before the date of shipment; that they appeared to be healthy and free from cholera; that they both had been over Carroll County that fall purchasing hogs, and had not heard of any cholera in the county.

Other witnesses for them testified that they saw the hogs prior to their shipment, and that they appeared to be healthy and free from cholera.

(1) The only assignment of error is that the evidence is not sufficient to support the verdict. In this contention we think counsel are correct. We have never adopted the scintilla rule in this State; on the contrary, we have uniformly held that to uphold a verdict on appeal, there must be some substantial evidence to support it. The uncontradicted testimony of the veterinary surgeons shows that it takes from seven to twenty days after a hog has a germ of cholera in its system before the disease becomes apparent. The hogs were shipped from Green Forest on the 9th, and arrived at Marianna on the 11th of December.

Starratt was the manager of the defendant's farm and took charge of the hogs upon their arrival at Marianna and hauled them home on the same day. He was not interested either in the farm or in the hogs except as an employee of the defendant. He stated that one of the hogs died on the way home, and that three more of them were dead, and others sick on the next morning.

An attempt was made to contradict his testimony in this respect by a letter written to his employer the next morning in which he stated that only one of the hogs was dead, and that the others appeared to be healthy. On the trial he stated that three of the hogs were dead the next morning, and that some of the others appeared sick on the way home. This makes an apparent but not a real contradiction in his testimony, for he states that the letter was written before daylight, and before he had had an opportunity to inspect the hogs the next morning, and that after he had written the letter he went out into the

lot and found three more of the hogs dead. The letter itself shows that it was written before daylight, and Starratt states that the letter was sealed as soon as written. In explanation of the fact that he had stated in his letter that the hogs, except the one which died on the way home, appeared to be healthy, he said that he noticed that several of the others were "wobbly" but, having had no experience with cholera, never thought of them having that disease, but supposed that they had become tired out from the long journey on the car.

The undisputed evidence shows that later on, the disease was pronounced cholera by the veterinary surgeons, and that, in fact, nearly all of the hogs on the place died with it. Starratt testified that he had a large number of hogs on the place at the time, and that they were healthy and free from disease, but contracted cholera after the hogs shipped by the plaintiffs had been received. His testimony shows that the other hogs became infected at a point of time after the arrival of the hogs in question, which indicates that they contracted the disease from the hogs shipped by the plaintiffs.

Starratt also testified that after he observed hogs which were known to have cholera, he was satisfied that the hog which died on the way home, and those found dead the next morning had been infected with cholera.

(2) His testimony was reasonable and consistent, and the jury had no right to arbitrarily disregard it. His testimony taken in connection with that of the veterinary surgeons makes it appear as nearly as human testimony can establish a fact that some of the hogs had the cholera germ in them prior to the time they were shipped to Marianna. See *St. Louis, I. M. & S. Ry. Co. v. Ramsey,* 96 Ark. 37.

The question then presents itself as to whether or not the testimony of the defendants was contradicted by that of the plaintiffs. If so, the jury were the judges of the credibility of the witnesses, and had a right to believe the testimony of the plaintiffs and disbelieve that of the defendants. We do not think, however, that the testimony

of the plaintiffs tends in any way to contradict that of the defendants. It is true that the plaintiffs testified that the hogs appeared to be healthy at the time they were shipped; but, according to their own testimony, the hogs had been collected up in small bunches from various parts of Carroll County and some of them had been in their possession only four days. And, according to the testimony of the veterinary surgeons, which was uncontradicted, cholera would not become apparent in a hog until at least seven days after it had been infected with the cholera germ.

We are not unmindful that the plaintiffs testified that they had ridden over Carroll County, and that they had not seen any hogs in that county affected with cholera. But this testimony was negative in its character, and the bald statement does not, of itself, offer any contradiction to the testimony of the defendants. Besides this, the testimony of the plaintiffs shows that cholera had existed in Carroll County since they had been engaged in shipping hogs from there. They wrote the defendants that they ought to have shipped the hogs and sold them on the market as soon as they discovered that they had cholera, and thus have prevented the total loss of the hogs. They stated that they had done this in the past with hogs which they had collected in Carroll County, and had not sold such hogs to feeders, but had shipped them to the market to be sold there for immediate consumption.

(3) After a careful examination and consideration of all the testimony, we have reached the conclusion that the testimony of the defendants is uncontradicted, and that it shows that the hogs were infected with cholera when they reached Marianna. If this is true, it is incontrovertibly established that they must have been infected with cholera prior to their shipment.

The judgment is reversed and the cause remanded for a new trial.

KIRBY, J., dissents.