WESTERN UNION TELEGRAPH COMPANY *v.* BALTZ.

Opinion delivered October 31, 1927.

1. TRIAL—PROVINCE OF JURY.—The jury are the sole judges from the weight of evidence and the credibility of witnesses.

2. EVIDENCE—PRESUMPTION AS TO THE RECEIPT OF MESSAGE.—Where a railway agent telephoned a message to the telegraph agent at another town, it was presumed that the latter heard and received the message as it was telephoned to him, and it was not necessary for plaintiff, suing for damages for failure to deliver message, to prove affirmatively that such operator heard or received the message as it was telephoned.

3. TELEGRAPHS AND TELEPHONES—TRANSMISSION OF MESSAGE—JURY QUESTION.—In an action for damages for failure to deliver a telegram which an operator telephoned to another agent at another town, the question whether the agent gave the address of the sendee as Pocahontas, Arkansas, instead of Pocahontas, Oklahoma, held for the jury.

4. TELEGRAPHS AND TELEPHONES—RECEIPT OF MESSAGE.—Where a telegraph operator receives a message over a telephone line, and writes the same down, the operator is acting for the company in writing the message, especially where it has been the custom to receive messages in such manner.

5. EVIDENCE—PRESUMPTION OF RECEIPT OF MESSAGE—REBUTTAL.—Where there is no statute on the subject, it is a rebuttable presumption that the message as spoken was heard over the telephone.

6. TELEGRAPHS AND TELEPHONES—FAILURE TO DELIVER TELEGRAM—EVIDENCE.—In an action for failure to deliver a telegram because sent to Pocahontas, Oklahoma, instead of Pocahontas, Arkansas, where a message was given to the railway agent, who telephoned it to a telegraph agent at another town, and defendant claimed that the railway agent was not its agent, and that the telegram was delivered as given, evidence *held* to sustain a verdict for plaintiff.

7. TELEGRAPHS AND TELEPHONES—DAMAGES FOR MENTAL ANGUISH FOR NON-DELIVERY OF TELEGRAM.—Under Crawford & Moses' Dig., § 10,249, there could be no recovery against the telegraph company for negligence in handling a message concerning a last illness and death, unless plaintiff proves that she could and would have attended the deathbed or funeral, if the message had been duly delivered, and therefore that she was deprived of such right and privilege by negligence of such company who handled the message.

8. TELEGRAPHS AND TELEPHONES—JURY QUESTION.—Whether or not plaintiff would have attended the deathbed or funeral if the telegram concerning the last illness and death had been delivered, is a question of fact for the jury, even though the plaintiff testifies that she could and would have gone, and her testimony is not affirmatively controverted, since plaintiff is an interested witness, whose testimony the jury is not compelled to believe.

9. TRIAL—CONFLICTING INSTRUCTIONS.—In an action for failure to deliver a telegram, regarding the last illness of plaintiff's mother, an instruction permitting plaintiff to recover for mental anguish without the jury's finding that she could and would have gone to her mother's bedside, if the telegram had been delivered, *held* not cured by an instruction providing that such damages might be

assessed provided plaintiff's failure to be with her mother at that time was caused by negligent failure of the defendant to deliver the message, since the two instructions were in irreconcilable conflict, and the jury had no correct guide.

10. TELEGRAPHS AND TELEPHONES—FAILURE TO DELIVER TELEGRAM—INSTRUCTION.—In an action for failure to deliver a telegram concerning plaintiff's mother's last illness, an instruction permitting plaintiff to recover for mental anguish, without finding that plaintiff could and would have gone to her mother's bedside if the telegram had been delivered, *held* reversible error.

Appeal from Randolph Circuit Court; *John C. Ashley,* Judge; reversed.

*Francis R. Stark, Block & Kirsch,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*John L. Bledsoe* and *Schoonover & Schoonover,* for appellee.

WOOD, J.   Mrs. Phillip (Agnes) Baltz instituted this action against the Western Union Telegraph Company. She alleged that on July 1, 1925, a brother of hers, Lee Lehnen, acting on her behalf, delivered a telegram to John Daniels, the railway station agent at Scranton, and also the defendant's agent. The telegram is as follows: "Please notify Agnes mother very low." She alleged that the message was signed by Lehnen and addressed to Joe Baltz, who was her brother-in-law, and acting for her. She alleged that she was the "Agnes" mentioned in the telegram, and that same was sent for her benefit; that the telegram was delivered over the railway company's telephone line to the agent of the defendant at Paris, Arkansas; that the defendants and its agent were negligent in receiving, transmitting and delivering the said telegram, and, because of such negligence, the telegram was never delivered; that her mother died on July 5, 1925, and that, because of the aforesaid negligence of the defendant and its agent, she had suffered and is continuing to suffer great mental anguish, due to the fact that she was unable to be with her mother during the last days of her life. She alleged damages in the sum of $2,500, for which she prayed judgment.

The defendant, in its answer, denied the material allegations of the complaint, and set up that, on July 1, 1925, Lehnen and Berg applied to John Daniels, agent of the railway company at Scranton, Arkansas, to send a message via defendant's line to Joe Baltz, at Pocahontas, Oklahoma; that John Daniels informed them that he was not the agent of the defendant and that he was not authorized to receive messages for transmission, and told them that they could telephone the message to defendant's agent at Paris, Arkansas; that Lehnen and Berg thereupon requested Daniels to do the telephoning for them; that Daniels telephoned the message set forth in plaintiff's complaint to the defendant company at Paris, Arkansas, addressed to Joe Baltz at Pocahontas, Oklahoma, and repeated the message to the agent of the defendant at Paris, Arkansas, naming Joe Baltz as the addressee and giving his address as Pocahontas, Oklahoma; that the defendant promptly transmitted the message to its agent at McAlester, Oklahoma, being the nearest office of the defendant to Pocahontas, Oklahoma; that the defendant, not being able to locate the addressee and to deliver the message by telephone, mailed the same from McAlester, Oklahoma, addressed to Joe Baltz, Pocahontas, Oklahoma; that Pocahontas, Oklahoma, was what is known as a free star station—that is, a station where messages are delivered only by telephone. The defendant alleged that, if the message was intended by the plaintiff to be delivered to the addressee at Pocahontas, Arkansas, instead of Pocahontas, Oklahoma, the mistake was due to the negligence of the plaintiff or her agents; that, if the message had been properly addressed to the addressee at Pocahontas, Arkansas, where the defendant maintains an office and agent, the same could and would have been delivered to the addressee without any delay whatever. The defendant alleged that the message, as delivered to and received by it, was an interstate message from Paris, Arkansas, to Pocahontas, Oklahoma, and that a recovery of damages for mental anguish for failure to deliver such a message would be

contrary to article 1, § 8, of the Constitution of the United
States and the acts of Congress, which the defendant
pleaded in bar of plaintiff's right to recover in this action.

After the filing of the answer the plaintiff amended
her complaint, and alleged that the message mentioned
was delivered over the telephone to the agent of the
defendant at Paris, Arkansas, and that the failure to
deliver the same to the plaintiff was because of the
negligence of defendant's agent at Paris and defend-
ant's other agents.

The witnesses, Lehnen and Berg, testified for the
plaintiff. Their testimony tended to sustain the allega-
tions of the complaint. They stated, in substance, that
they went to the railroad depot at Scranton, Arkansas,
and requested the company's agent, John Daniels, to
send the message mentioned. The agent wrote out the
message. They told him to send it to Pocahontas,
Arkansas, and repeated it to him twice, and he repeated
it over the phone twice. Witnesses heard him give the
address over the phone as Pocahontas, Arkansas. They
did not know whether the operator of the phone at Paris
repeated the message back to Daniels or not. Witness
paid the station agent a fee of $1.10 for the transmission
of the message. Witnesses were about ten feet from
Daniels, and, although he held the receiver about four
inches from his mouth, he talked loud and plain, and
they could hear what he said. Daniels told the witnesses
that it was not a telegraph office, but that he would tele-
phone the message as a matter of accommodation.

The undisputed evidence showed that it was the cus-
tom of the railway station agent at Scranton to collect for
telegraph messages originating at that station. It is
conceded that the telegram was not delivered.

The plaintiff testified, in substance, that she was the
Agnes referred to in the telegram mentioned in her com-
plaint. She had made arrangements to be notified in
case her mother became seriously ill. She was to go
down there right away in case something serious should
come up. She was to be notified by telegram, which was

to be sent to Joe Baltz, who was to deliver the message to her. If the message had been delivered on the day of its date, July 1, she would have got to her mother's bedside on July 2 by three o'clock. Witness went to Scranton, where her mother lived, on July 6, and found that her mother was dead. They were making preparations for the funeral, and were about ready to take her out to be buried. Her mother talked about witness all the time during her last illness. The failure to get the telegram had an awful effect on witness. She would not have taken any money and nothing would have kept her from going to see her mother if she had known her mother was so ill. Witness was the youngest child, and stayed with her mother the longest, and was her favorite. Witness stayed with her mother four years after witness was married, and witness' mother seemed to think more of her than she did the rest of the family. Nothing would have kept witness from going to see her if she had known she was so low. Witness fainted when she realized she could not see her mother alive—became unconscious. The thought that her mother was dying and wanted to see witness and witness not getting to see her affected witness more than her mother's death. Witness had not seen her mother for about a year, but heard from her each week two or three times, until the last week. After they had sent the telegram they thought that witness would come, and witness did not hear from them.

The testimony of the witnesses on behalf of the defendant tended to prove the allegations of its answer. John Daniels testified, and his testimony was substantially the same as that of the witnesses for the plaintiff, as to the receipt by him of the message to be telephoned to the defendant's agent at Paris, but he contradicted them flatly as to the place the message was to be sent. He states that the message was addressed to Mrs. Phillip Baltz at Pocahontas, Oklahoma; that is the way he wrote the message down and that is the way he phoned it to the Western Union operator at Paris. The defendant's operator at Paris repeated the message to witness in that

form.  Witness did not tell him to change it in any way, nor was he notified by Berg or Lehnen at the time of any error that was being made.  Witness does not know whether they heard the telephone message or not, but they were at the window, possibly ten feet away; that was the only message that Lehnen and Berg brought to the witness.  The message was addressed to Mrs. Phillip Baltz, Pocahontas, Oklahoma.  On cross-examination the witness testified that the message was addressed to Joe Baltz, and the substance of the message was, "Please notify Agnes mother very low and come at once." Lehnen and Berg paid the witness the fee for sending the message, and witness sent the fee to the operator at Paris.  Witness generally did that when he sent telephone messages.  Witness had been agent there for two years, and had been receiving and sending messages in that manner during that time.

Defendant's telegraph operator at Paris was a witness. · He testified that he handled telegraph messages at that point.  He remembered receiving the message from Daniels at Scranton by phone on July 1, 1925.  He didn't remember exactly the contents, but the message was to notify somebody of the serious illness of a woman at Scranton.  It was addressed to Joe Baltz at Pocahontas, Oklahoma.  Witness took the message down as it was dictated to him.  After refreshing his memory by an examination of the message, he stated that the message was the same as that set out in the complaint. Witness relayed the message to Fort Smith, and from there it was forwarded to its destination at Pocahontas, Oklahoma.  Witness repeated the message back to Daniels over the telephone, and gave the address as it was given to him as Pocahontas, Oklahoma.  No correction was made in the address given.  Witness never received any message by telephone or otherwise from John Daniels addressed to Joe Baltz at Pocahontas, Arkansas.  Witness sent the message right off after he received the same.  Witness received the fee for sending the message.  Witness had nothing to do with the

fee for the telephoning of the message; witness' company did not collect for that.

The district consulting superintendent of the defendant, having supervisory jurisdiction over the defendant's offices in Arkansas and Oklahoma, stated that the defendant did not maintain an office at Scranton, Arkansas, on July 1, 1925, or at any other time during that year. John Daniels was not in the employ of the defendant, and was not authorized by it to receive messages for transmission on July 1, 1925, or at any other date.

The court, at the instance of the plaintiff, gave, among others, the following instruction:

"No. 1. You are instructed that, if you believe from the evidence that Lee Lehnen, on or about the date of July 1, 1925, through one John Daniels, delivered a telegraphic message from Scranton, Arkansas, to the agent of defendant at Paris, Arkansas, over the telephone as follows: 'Please notify Agnes, mother very low. Lee Lehnen,' and addressed 'Joe Baltz, Pocahontas, Arkansas,' and that, through the negligence of defendant or the defendant's agent, the said message was not delivered to Joe Baltz at Pocahontas, Arkansas, and that because of the said message not being delivered, the plaintiff received no notice of the serious condition in which her mother was, in time to arrive at her bedside prior to her death, and if you further believe that the Agnes referred to in the said telegram was the plaintiff, then it would be your duty to render a verdict in favor of the plaintiff for whatever damage you may think she suffered because of the mental anguish experienced by her, caused by the failure to receive the said message, not to exceed the sum of $2,500."

The plaintiff objected generally and also specifically on the ground that it authorized a recovery in favor of the plaintiff "without requiring the jury to find that the plaintiff would and could have gone to the bedside of her mother if the telegram had been delivered."

At the request of the defendant the court, among others, gave the following instruction:

"No. 7. If your verdict is for the plaintiff, then you should assess her damages in such sum as will compensate her for the mental anguish she suffered, if any, by reason of being deprived of the opportunity of being with her mother prior to her death, provided you believe her failure not to be with her at said time was caused by the negligent failure of the defendant to deliver the message in question."

The jury returned a verdict in favor of the plaintiff, awarding her damages in the sum of $500. Judgment was rendered in her favor for that sum, from which is this appeal.

1. The appellant contends that there is no testimony to sustain the verdict. This contention is bottomed upon the testimony of McAllister and John Daniels. McAllister testified that the message as received by him over the telephone was directed to Pocahontas, Oklahoma, and that he sent the message as directed. Daniels testified, in substance, that he, at the request of Lehnen and Berg, agents of plaintiff, wrote down the message in evidence, "Mother very low, come at once," and phoned it to appellant's operator at Paris, Arkansas, to be sent to the addressee at Pocahontas, Oklahoma. He did not think he could be mistaken as to which State the message was sent. He sent it the way he got it from Lehnen and Berg. Counsel argue that the testimony of these witnesses was reasonable, consistent, and uncontradicted, and therefore the jury had no right to arbitrarily disregard it. They invoke the rule recognized by our own court and by the authorities generally, so far as we are advised, "that when a disinterested witness, who is in no way discredited, testifies to a fact within his own knowledge, which is not of itself improbable or in conflict with other evidence, the witness is to be believed and the fact is to be taken as legally established, so that it cannot be disregarded by a court or jury." *Kavanaugh* v. *Wilson,* 70 N. Y. 177-179. The numerous authorities recognizing this rule are collated in note to *Brown* v. *Peterson,* 4 A. & E. Ann. Cases, 981. See

also *St. Louis, I. M. & S. Ry. Co.* v. *Ramsey*, 96 Ark. 37, 131 S. W. 44, Ann. Cas. 1912B 383; *Osborne* v. *Hittson*, 118 Ark. 349-353, 176 S. W. 318.

The case in hand does not come within this rule, for the reason that it cannot be said that the testimony of the witnesses, Daniels and McAllister, as set forth, is uncontradicted. Both Berg and Lehnen testified unequivocally that they heard Daniels telephone the message to Paris, Arkansas, and that he gave Pocahontas, Arkansas, as the place to which the message was to be sent. This was testimony from which the jury might have found that the witnesses, Daniels and McAllister, were mistaken, or else testified falsely, when they stated that the address phoned to Paris was Pocahontas, Oklahoma, instead of Pocahontas, Arkansas. The jury were the sole judges of the weight of the evidence and the credibility of these witnesses. But it is insisted that, even if the testimony of Berg and Lehnen contradicted that of Daniels, there is, nevertheless, no contradiction of the testimony of McAllister to the effect that he understood the address given as Pocahontas, Oklahoma, instead of Pocahontas, Arkansas. Counsel urge therefore that, since the burden was on the appellee to prove by a preponderance of the evidence that the appellant's agent at Paris, Arkansas, received the correct information, appellee's case must fall because there is no testimony to show that appellant's agent at Paris understood that the message was to be sent to Pocahontas, Arkansas, instead of Pocahontas, Oklahoma, and that, until the appellee makes such proof, there is no testimony tending to establish negligence on the part of the appellant.

It was not essential that the appellee prove affirmatively by the testimony of some witness that the operator of the appellant at Paris heard or received the message as it was telephoned to him by the station agent at Scranton. If the message, as set up in the complaint, was communicated by the station agent at Scranton over the telephone to the appellant's operator at Paris, the presumption would be that the appellant's agent at Paris

heard and received the message as it was phoned to him by the station agent at Scranton, and, in the absence of proof to the contrary, the jury would be justified in so finding. True, the appellant's agent at Paris and likewise the station agent at Scranton testified that the address of the sendee was given over the telephone as Pocahontas, Oklahoma, and not Pocahontas, Arkansas. The appellant's agent at Paris does not claim that any mistake was made by him in hearing the message; he testified unequivocally that he heard and received the message as it was telephoned to him, and that the address of the sendee given him over the phone was Pocahontas, Oklahoma. The testimony of Daniels was to the same effect, but the testimony of appellee's witnesses, Lehnen and Berg, was just as positive and unequivocal that the station agent at Scranton telephoned to the operator at Paris the message as set forth in the appellee's complaint, and gave the address of the sendee as Pocahontas, Arkansas. It was therefore a question for the jury, under the evidence, as to whether the railway station agent at Scranton, in the telephone message to appellant's operator at Paris, gave the address of the sendee in that message as Pocahontas, Arkansas, instead of Pocahontas, Oklahoma. While the appellant's superintendent testified that appellant did not have an agent at Scranton, Arkansas, and while the station agent at Scranton also testified that he was not employed by the appellant as its agent at Scranton, nevertheless the uncontroverted testimony is that it was the custom for the railway station agent at Scranton to receive and telephone messages to the appellant's operator at Paris and to collect appellant's charges for such messages.

In Jones on Tel. & Tel., p. 449, § 327, it is said:

"It has generally been held that, where an operator writes the message for the sender at the latter's request, he acts as agent for him and not for the company in this particular matter. His duties toward the company are to receive the messages and the charges for the same, and then to transmit them; when he goes beyond this

duty, he does not act as the company's agent. While this is the general holding, it seems there is, and ought to be, an apparent exception to the general rule. Thus, if the message is received by the operator over a telephone line and written down by him, the operator then acts for the company, especially if it has been the custom to receive messages. Where the party desiring to send a message is unable to write on account of ignorance, or because he cannot see how to write, or when otherwise. unable to write, the company should not refuse to serve him for this purpose, but the scope of the operator's agency under such circumstances should, it seems, be enlarged so as to devolve upon him the duty to perform this service.'' See especially *Carland* v. *West. U. Tel. Co.*, 118 Mich. 369, 376, 76 N. W. 762, 764, 43 L. R. A. 280, 74 Am. St. Rep. 394, where, among other things, it is said, page 399: ''We cannot conclude, in the absence of proof, that the telegraph companies expect their operators to turn away patrons who cannot write, or that they keep telephones in the office but do not permit their use in their business by patrons who send and receive messages.''

In the case at bar the appellant did not refuse to receive messages that were telephoned to it through the railway station agent at Scranton, but, on the contrary, accepted and received messages originating in this manner and collected its fee through the railway station agent for such messages. Appellant therefore, having adopted the instrumentality of the telephone for receiving messages originating at Scranton, is not in an attitude to repudiate as a matter of law the accuracy of such instrumentality. The burden, to be sure, was upon the plaintiff to prove that the message as set forth in her complaint was delivered to the railway station agent, and that, as such agent, he telephoned the message as it was delivered to him, to appellant's operator at Paris. Having made this proof, she established a *prima facie* case which entitled her to recover, unless the appellant could show that its operator at Paris, without fault or careless-

ness, had misunderstood the message. Having adopted the telephone as its agency to receive messages from Scranton, appellant cannot say, as a matter of law, or as an indisputable presumption, that this method of sending messages is unreliable and that the burden of proof was upon the appellee, under the circumstances, to show by affirmative testimony that the appellant's agent at Paris understood the message as it was received at Scranton. Counsel for appellant cites the cases of *Cameron* v. *Telg. Co.*, 90 S. C. 503, 74 S. E. 929, and *Painter* v. *West. U. Tel. Co.*, 100 S. C. 65, 84 S. E. 293, which seem to hold that there is "no presumption that people speaking over the telephone understand each other." That possibly may have been sound doctrine when the telephone was in its infancy and a crude and undeveloped instrumentality of verbal intercommunication; but, with all due deference to the learned court that first announced this rule, it certainly cannot be accepted now, when the telephone has been brought to such a state of perfection that it is in almost universal use as a reliable means of intercommunication in the social and business world. The presumption now is that when people talk over the telephone they do understand each other.

As is well said by the Supreme Court of Kentucky in *Holzhauer* v. *Sheeny*, 127 Ky. 28-36, 104 S. W. 1034, 1036, "the telephone is an instrument of such common—indeed, almost necessary—use in mercantile and social affairs of this day that, to deny such evidence probative effect, would be to seriously cripple the utility of this great modern instrument of communication. That which is generally accepted in the everyday affairs of life, and customarily in business transactions, as evidence, may safely be, and generally is, adopted by the courts also as evidence." In *Star Bottling Co.* v. *Cleveland Faucet Co.*, 128 Mo. App. 517, 109 S. W. 802, it is held that telephone communications stand upon the same footing as conversations as to admissibility in evidence. It seems to us, the sound doctrine to apply to these agencies is that they are "subject to the opera-

tion of the disputable presumptions and inferences applicable to like affairs.'' Where there is no statute upon the subject, when a message has been spoken over the telephone, the presumption will be that it was heard as it was spoken. Such presumption is a rebuttable one, to be sure, but, when the plaintiff introduced proof tending to show that the message addressed to the sendee at Pocahontas, Arkansas, was sent over the 'phone to appellant's operator at Paris, the other end of the telephone line, appellant has established, *prima facie* at least, that the telephone message was heard by appellant's agent at Paris as the same was telephoned to him from Scranton, and the burden was shifted to appellant to show otherwise. See *Union Construction Co.* v. *West. U. Tel. Co.,* 163 Cal. 298, 125 Pa. 242, 245; also *Wolf* v. *Railroad Co.,* 97 Mo. 473, 11 S. W. 42, 3 L. R. A. 539, 10 Am. St. Rep. 331; *K. C. Star Co.* v. *Standard Warehouse Co.,* 123 Mo. App. 13, 99 S. W. 765; *Star B. Co.* v. *Cleveland F. Co.,* 109 S. W. 802, 128 Mo. App. 517; *West. U. Tel. Co.* v. *Rowell,* 153 Ala. 295-314, 45 So. 73; Jones, Tel. & Tel. Co., p. 645, § 509. We conclude therefore that there was evidence to sustain the verdict

2. The damages recoverable for mental anguish, under our statute, § 10249, C. & M. Digest, must be such as result proximately from the negligence of the telegraph company in receiving, transmitting and delivering messages. The negligence of the company must be the proximate cause of the mental anguish. The anguish resulting from the illness or death of a relative cannot, *per se,* be caused by the negligence of a telegraph company in handling a message announcing such illness or death. Such anguish is caused by the fact of the illness or death, and exists entirely independent of anything the telegraph company may or may not do in communicating the fact of the illness or death. Hence in our own and other jurisdictions, where damages for mental anguish are recoverable, the well-established doctrine is that there can be no recovery against the company for negligence in handling a message pertaining to last ill-

ness and death unless the plaintiff proves that he could, and would, have attended the death-bed or funeral if the message had been duly delivered, and that he was therefore deprived of such right and privilege by the negligence of the company in handling the message. See *Thorpe* v. *West. U. Tel. Co.,* 94 Ark. 530, 127 S. W. 730, 37 Cyc. 1782-3, IV, and cases cited in note; 27 Am. & Eng. Ency. of Law, 1075-6, and note. Some cases directly in point cited by counsel for appellant are: *West. U. Tel. Co.* v. *May,* 8 Tex. Civ. App. 176, 27 S. W. 760; *Kernodle* v. *West. U. Tel. Co.,* 141 N. C. 436, 54 S. E. 423, 8 Ann. Cas. 474; *Cumberland Tel. Co.* v. *Brown,* 104 Tenn. 56, 55 S. W. 155, 50 L. R. A. 277, 78 Am. St. Rep. 906.

Whether or not, in any case, the plaintiff could and would have attended the death-bed or funeral is an issue of fact for the jury, even where the plaintiff testifies that he could and would have gone to the death-bed or funeral if the message had been promptly delivered. See above cases. Even though the plaintiff's testimony be not affirmatively controverted, still the issue of whether the plaintiff could and would have gone to the death-bed or funeral is one of fact and not of law, for the reason that the plaintiff is an interested witness, whose testimony the jury is not compelled to believe. *Skillern* v. *Baker,* 82 Ark. 86, 100 S. W. 764, 118 Am. St. Rep. 52, 12 Ann. Cas. 243; *Lilly* v. *Robinson Merc. Co.,* 106 Ark. 571, 153 S. W. 820; *Salmon* v. *Boyer,* 139 Ark. 236, 213 S. W. 383; *Business Men's, etc. Assn.* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51; *Oyler* v. *Semple,* 163 Ark. 620, 260 S. W. 744.

Appellee's prayer for instruction No. 1 completely ignored the law that the jury must find that she could and would have gone to her mother's bedside if the telegram had been delivered. The appellant specifically objected to the above prayer for instruction, because it did not contain the essential qualification mentioned. The court erred in granting appellee's prayer No. 1 without adding the above qualification, because, under the prayer as granted, if the jury found the other issuable facts

mentioned therein in favor of the plaintiff, they were told that *"it would be their duty to render a verdict in favor of the plaintiff."* True, the court granted appellant's prayer for instruction No. 7, which is as follows:

"If your verdict is for the plaintiff, then you should assess her damages in such a sum as will compensate her for the mental anguish she suffered, if any, by reason of being deprived of the opportunity of being with her mother prior to her death, provided you believe her failure not to be with her at said time was caused by the negligent failure of the defendant to deliver the message in question."

Appellee contends that the granting of appellant's prayer for instruction No. 7 cured the error, if any, in appellee's prayer for instruction No. 1. But not so; these instructions were in irreconcilable conflict, and the charge of the court was thus made inconsistent, inharmonious and contradictory. The jury had no correct guide. *Marianna Hotel Co.* v. *Livermore F. & M. Co.,* 107 Ark. 245, 154 S. W. 952; *St. L. I. M. & S. Ry. Co.* v. *Bright,* 109 Ark. 4, 159 S. W. 33; *Turquett* v. *McMurrain,* 110 Ark. 197, 161 S. W. 175, and numerous cases collated in 4 Crawford's Arkansas Digest, page 4990, "Trial," § 89. The appellee's prayer for instruction No. 1 should have been corrected to meet appellant's specific objection thereto, or else should have been withdrawn altogether. See *May* v. *West. U. Tel. Co. supra*; *Baker* v. *Ashe,* 80 Tex. 356, 16 S. W. 36.

For the error of the court in granting appellee's prayer for instruction No. 1 without modification, the judgment is reversed, and the cause is remanded for a new trial.