THE MEYER MILLING COMPANY, A CORPORATION, RESPONDENT, v. H. F. STROHFELD, APPELLANT.*

Springfield Court of Appeals. January 20, 1928.

*Corpus Juris-Cyc References: Bills and Notes, 8 CJ, section 710, p. 501, n. 18; section 1292, p. 984, n. 60; section 1345, p. 1031, n. 85; Trusts, 39Cyc, p. 175, n. 34.

*Rex McPherson, James E. Sater, Charles Farrar, C. W. Hamlin* and *Addison Brown* for appellant.

*Mann & Mann* and *John W. Miller* for respondent.

BAILEY, J.—This is a suit by the endorsee of a promissory note against the maker. The note was for the sum of $100, dated October 29, 1924, payable to the order of George W. Wilson, trustee, due one year after date with interest at the rate of eight per cent per annum.

The petition states that plaintiff is owner and holder of the note and acquired same in due course and for value and that the note is past due and unpaid. Defendant, by his answer, admits the execution and delivery of the note, but alleges that the note was given without consideration and was obtained by false and fraudulent representations (not set out) which defendant at the time believed and by which he was induced to sign and deliver the note. Defendant's answer further sets up that the facts and circumstances under which he signed and delivered said note and pleads the fraudulent transfer thereof, as follows:

"That F. E. Smith represented and pretended to the defendant that he had authority and was legally authorized to sell and issue stock in a proposed company and that George W. Wilson was to be the trustee of the fund provided for the incorporation of the said proposed mill company which was after its incorporation to buy and operate flour mills at Republic, Missouri, that such stock would be issued the defendant, but that no such authority existed and no such stock was in existence and that said stock was not issued to defendant and that there was no consideration for said note.

"Defendant states further that the plaintiff knew at the time the plaintiff purchased defendant's note from F. E. Smith that said note was executed to George W. Wilson, trustee, as part of a fund which was to be used to incorporate a milling company that was to buy certain milling properties and that said note was not the personal property of F. E. Smith, the person from whom it was obtained, but that it was a trust fund for the purposes hereinabove set forth and was being diverted from the trust fund purposes by the said F. E. Smith."

The reply was a general denial. Upon a trial of the issues to a jury the circuit court directed a verdict for plaintiff. Defendant has appealed from the judgment.

At the trial plaintiff first offered in evidence the note in question, duly endorsed, and rested its case. Defendant, to sustain the issues on his part, testified that he lived three miles west of Billings; that he signed the note October 9, 1924; that he was in town one day and a Mr. Smith asked him to take a share in the Billings or Republic Mill; that Smith told him, "it is an awful good thing. We can get the mill at half price now for what it is worth and it would be an awful good thing." Just how long before the note was given that

1196

this conversation took place is not shown. Smith also told defendant that he was going to organize a company to buy the big mill at Republic. At the time the note was delivered Smith gave defendant a receipt therefor reciting that it was "on payment of one share of stock in the Consolidated Mill Company." After the note was given Smith told defendant that they had actually purchased the mill at Republic, which statement proved to be false. As that statement was made after the note was executed and delivered it could have been no inducement to defendant in signing the note and, of course, constituted no proof of fraud in its procurement. In fact defendant failed to offer any proof to establish his general charge of fraud in the procurement of the note and it is not seriously urged here, or was not until defendant filed his final brief, that the evidence tends to establish that fact. There is evidence tending to prove total failure of consideration and breach of trust. The note was given for stock in a proposed corporation which was never organized. The payee in the note, George W. Wilson, trustee, some time prior to its maturity, returned the note, duly endorsed, to Mr. Smith from whom he had received it. It is not shown just when this endorsement was made or that Wilson intentionally was a party to any fraud. He testified that most of the notes were returned to the makers because it (the company) was not organized and they did not raise the fund; that he returned all the notes to the makers except what he "turned back to Smith."

There are a number of theories advanced by defendant in his three briefs filed in this case but, under the pleadings and evidence, the principal issue relates to the effect of the word "trustee" following the name of the payee in the note. This note was made payable to "George W. Wilson, trustee." The question is whether or not the word "trustee," following the name of the payee in the note, was a sufficient fact to place plaintiff upon inquiry and to make its action in taking the instrument amount to bad faith under the circumstances.

A similar question was before this court in the case of W. J. Howey Company v. A. B. Cole, Commissioner, No. 4336 (decided at this term but not as yet officially reported). In that case we considered the rule laid down by our Supreme Court in the case of Sanford v. Van Pelt, 282 S. W. 1022, wherein that court refused to be bound by the holding in Powell v. Morrison, 35 Mo. 244, and other cases which hold that the use of the word "trustee" following the name of the grantee or donee in an instrument of writing is mere *descriptio personae* and does not evidence a trust relationship. The Supreme Court said: "We regard those decisions from which we have quoted, and which hold that the word 'trustee' following the name of the grantee in a deed of conveyance or other instrument, is not merely *descriptio personae*, but evidences the fact or existence of a

trust, as enunciation and stating the more logical, reasonable and equitable principle or doctrine of law." The Sanford suit was brought by the beneficiary of a trust; it involved a deed to real estate wherein the word "trustee" followed the name of the grantee in the deed and it was held that thereby the fact of the existence of a trust estate was evidenced.

It is argued that the same rule should not be applied to the holder of a promissory note because our Negotiable Instrument Law provides that, "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." [Section 842, Revised Statutes 1919.] It has been held, in a suit by the beneficiary of a trust, that the term "trustee" imports actual knowledge of sufficient facts, within the meaning of the section of the Negotiable Instrument Law above quoted. [Ford v. H. C. Brown & Company, 114 Tenn. 467; 88 S. W. 1036, 1 L. R. A. (N. S.) 188.]

In the case at bar, however, we are concerned with the rights of the maker of the note and not the rights of a beneficiary of the trust.

We may take the law as settled in this State, since the decision in Sanford v. Van Pelt, supra, that insofar as the beneficiary of a trust is concerned, the word "trustee" following the name of the grantee in a deed or following the name of the donee or payee in some other instrument, signifies the existence of a trust and makes of the purchaser a constructive trustee for the benefit of the *cestui que trust*. But where the rights of the maker are concerned, we are dealing solely with the question as to the effect of the word "trustee" upon the negotiability of the instrument, and not with the question of notice of the trust character of the instrument and that rights of beneficiaries may be involved. The distinction is clearly shown in the case of Fox v. Citizens Bank & Trust Company (Tenn.), 37 S. W. 1102, 25 L. R. A. 678 and note, also Ford v. Brown, supra, and note, 1 L. R. A. (N. S.) p. 188. In the Fox case the court uses this language: "The argument or proposition is advanced by implication, at least, that the fact that these notes are made payable to Anderson, trustee, impaired their negotiability, or put a transferee on notice of all equities existing as between the maker and the trustee. In a contest between the beneficiaries of these notes, assuming that Anderson was not their real owner, and the transferee of Anderson, the fact that the notes appeared on their face to be payable to him, as trustee, would put the transferee on notice, and the claim of the beneficiaries would be superior. [Cardwell v. Cheatham, 2 Head, 14; Duncan v. Gaudon, 82 U. S. 15,—Wall. 175, 21 L. Ed. 125; Shaw v. Spencer, 100 Mass. 389, 1 Am. Rep. 115, 97 Am.

Dec. 107; Alexander v. Alderson, 7 Baxt. 403.] Because the notes gave direct information that they were trust property and the direct *corpus* of the transfer was to pay his individual debt. [Covington v. Anderson, 16 Lea, 310.] But it is held in other jurisdictions that a note to and endorsed by one as trustee of a named person, does not carry to an innocent purchaser any notice of a restriction upon the payee's right to transfer it. [Downer v. Reid, 17 Minn. 493 (Gil. 470); Bush v. Teckard, 3 Harr. (Del.) 385, citing Randolph, Con. Paper 158, page 242; Davis v. Garr, 6 N. Y. 124, 55 Am. Dec. 387, and note; Pierce v. Robie, 39 Me. 205, 63 Am. Dec. 614; Conner v. Clark, 12 Cal. 168, 73 Am. Dec. 529. As a general thing, the addition of the words 'trustee,' and the like will be treated as *descriptio personae*. Authorities, supra; 2 Am. Eng. Ec. Law, page 358, notes on pages 358 and 359. We take it that the decided weight of authority, and, it seems to us, of sound reason, support the position that the addition of the word 'trustee' to the name of the payee of a note, of itself, does not destroy its negotiability.''

We believe the foregoing statement of the law is sound and supported by the authority of practically every court of last resort where the question has been raised. It is also in harmony with the Missouri cases on the proposition as to what facts are necessary to constitute note of an infirmity or defect in the title of a negotiable instrument when acquired by a bona-fide purchaser for value before maturity. [Jennings v. Todd, 118 Mo. 296, 24 S. W. 148; Mayes v. Robinson, 93 Mo. 114, 5 S. W. 611; Hamilton v. Marks, 63 Mo. 167; Link v. Jackson, 158 Mo. App. 63, 139 S. W. 588; Borgess Investment Co. v. Vette, 142 Mo. 560, 44 S. W. 754.]

It follows that the existence of the word ''trustee'' on the note in suit did not destroy plaintiff's position as a holder in due course and such circumstance was not sufficient to impute bad faith on the part of plaintiff in acquiring the instrument nor did it have the effect of destroying its negotiability.

Such being the law, plaintiff was in the same situation, insofar as the rights of the maker were concerned, as it would have been had the note been payable simply to ''George W. Wilson,'' without the additional word ''trustee.''

We have heretofore indicated that in our opinion defendant failed to prove fraud in the procurement of this note. It is urged that because defendant testified that the proposition made to him by Smith was to purchase only the one big mill at Republic, whereas the proof showed the other mills were to be purchased, fraud was shown in the procurement of the note. Defendant's answer, as it appears in the record, plainly states the company was to be incorporated ''to buy certain milling properties.'' Even if that be a mistake, as urged by defendant's counsel in oral argument, the evidence fails to

show that Smith told defendant that the proposed company, to be incorporated as the "Consolidated Mills Company," was to purchase only the mill at Republic and no other mill. We are unable to perceive any actionable fraud on that theory. The proof shows, however, that no mill was purchased and the corporation was never formed. The purpose for which the note of defendant was given and the consideration therefor failed. The note payable to and held by George W. Wilson, as trustee, was "turned back" by him to Smith, duly endorsed. According to the evidence of Wilson he did not return this note to Smith until the project had failed. He states that most of the notes were returned to the makers "because it was not organized and they did not raise the funds." It is clear from his brief testimony that the note was not sold by him to Smith and we think the inference is fair that he receive nothing therefor. Smith, however, negotiated the note to plaintiff without authority, and it seems to us, clearly in breach of faith and under circumstances amounting to fraud. He was the man who obtained the note from defendant; he knew the purpose for which it was given and that that purpose had failed. When the note was returned to him by the trustee, Wilson, it was, of course, his duty to return it to defendant. Instead of doing so he apparently sold the note to plaintiff for a valuable consideration and for his own private purposes.

We think the record fully sustains the view that there was substantial evidence tending to prove the title of Smith was defective within the meaning of section 841, Revised Statutes 1919. The answer seems to plead that fact and under such circumstances the burden of evidence was upon plaintiff to prove its good faith in the transaction by showing all the facts and circumstances under which it acquired the note. [Sec. 845, R. S. Mo. 1919; Downs v. Horton, 230 S. W. 103.]

We therefore hold that although the word "trustee" following the name of the payee in the note was not in itself notice of a defective title and did not affect the negotiability of the note, nevertheless, upon proof that the title of Smith was defective, not merely as to failure of consideration, but because of fraudulent breach of trust, it became plaintiff's duty to go forward with proof that it purchased the note in good faith and without notice of the fraud or breach of trust on the part of Smith. It follows that the trial court committed error in directing a verdict for plaintiff. If upon a new trial plaintiff's evidence reveals all the facts connected with its purchase and tends to establish that it purchased the note in good faith without notice of the defective title of Smith, then in the absence of further proof of actual knowledge on the part of plaintiff a di-

rected verdict for plaintiff would be proper. [Newton County Bank v. Cole, 282 S.. W.. 466.]

For the reasons stated the judgment is reversed and the cause remanded. *Cox, P. J.*, and *Bradley, J.*, concur.