# MARCH, 1929.

MEYER MILLING COMPANY, APPELLANT, v. H. F. STROHFELD, RESPONDENT.—20 S. W. (2d) 963.

Springfield Court of Appeals. July 12, 1929.*

*(Note:—The Supreme Court of Missouri refused to quash this opinion in this case on writ of certiorari. See 30 S. W. (2d) 462.)

*Mann & Mann* and *Jno. W. Miller* for appellant.

*C. W. Hamlin* and *Rex McPherson* for respondent.

510

BAILEY, J.—This is an action on a promissory note by the holder against the maker. The suit was filed in Christian county returnable to the May term, 1926, of the circuit court thereof, and was sent to Lawrence county on application for change of venue, where the case was tried, verdict directed for plaintiff and appeal taken to the October term, 1927, of this court. The cause was by this court reversed and remanded for new trial. [Meyer Milling Company v. Strohfeld, 4 S. W. (2d) 864.] A new trial was had to a jury, resulting in a verdict and judgment for defendant and plaintiff has appealed.

The note in suit was dated October 29, 1924, and payable to the order of "George W. Wilson, Trustee." The note was procured from defendant by one F. E. Smith, and was to be used in the purchase of certain mill properties. This note was turned over to George W. Wilson and retained by him until the project failed to materialize. He thereupon returned this particular note, together with other notes, to F. E. Smith. The latter sold the notes to plaintiff under circumstances hereinafter set forth. A more detailed understanding of the principal facts may be had from a reading of the Strohfeld case, supra, which facts need not here be re-stated. In the former appeal we held the word "trustee," following the name of the payee in the note, was no notice of defective title in an action between the maker and endorsee and that such circumstance did not, in itself, destroy plaintiff's position as a holder in due course. We further held that the evidence indicated fraud and defect of title in Smith. In reversing and remanding the case, we stated our understanding of the law to be as follows:

"We think the record fully sustains the view that there was substantial evidence tending to prove the title of Smith was defective within the meaning of section 841, Revised Statutes 1919. The answer seems to plead that fact, and under such circumstances the

burden of evidence was upon plaintiff to prove its good faith in the transaction by showing all the facts and circumstances under which it acquired the note. [Section 845, R. S. 1919; Downs v. Horton, 287 Mo. 414, 230 S. W. 103.]

"We therefore hold that, although the word 'trustee' following the name of the payee in the note was not in itself notice of a defective title, and did not affect the negotiability of the note, nevertheless, upon proof that the title of Smith was defective, not merely as to failure of consideration, but because of fraudulent breach of trust, it became plaintiff's duty to go forward with proof that it purchased the note in good faith and without notice of the fraud or breach of trust on the part of Smith. It follows that the trial court committed error in directing a verdict for plaintiff. If upon a new trial plaintiff's evidence reveals all the facts connected with its purchase, and tends to establish that it purchased the note in good faith, without notice of the defective title of Smith, then, in the absence of further proof of actual knowledge on the part of plaintiff, a directed verdict for plaintiff would be proper." [Meyer Milling Co. v. Strohfeld, supra, l. c. 866-867.]

The case was re-tried on the same pleadings as in the former trial. Plaintiff, in order to comply with this court's requirement that it go forward with proof that it purchased the note in good faith, offered evidence showing the circumstances under which it purchased the note. On that issue, Mr. L. S. Meyer testified that he was vice-president and general manager of the plaintiff company and as such handled the matters leading up to the acquisition of the note in suit; that the note was gotten from F. E. Smith on a deal to sell to Smith, or the Billings Milling Company, plaintiff's mill at Republic. The terms of the agreement were set forth in a written contract dated February 3, 1925. As to the consideration for this transfer the contract provided as follows: "Party of the second part (Smith) agrees to deliver to the parties of the first part notes now owned by the Billings Milling Company to the amount of fifty-two hundred dollars ($5200), and the parties of the first part agree upon approval of the said notes to pay to the party of the second part twenty-five hundred dollars ($2500) in cash—the balance of twenty-seven hundred dollars ($2700) to be applied upon the purchase price of the one hundred and fifty (150) shares of stock or the total capital stock of the Republic Custom & Merchant Mill, leaving a balance of seventy-three hundred ($7300) dollars to be paid for as above stated in good bankable notes."

Thereafter possession of the Republic Mill was delivered to Smith who operated it for several months. Plaintiff paid Smith $2500 cash; at that time Smith tendered plaintiff certain notes, among them being the Strohfeld note in suit. L. S. Meyer further testified as follows:

"I did not know anything at all about that consolidated mill they have been talking about at that time. In December, 1924, I did not know anything about these notes or know they were in existence. I didn't have any deal up about this mill or anything else connected with them then at all. Mr. Strohfeld's note was among the fifty-two hundred dollars worth of notes described in the contract and offered to us at that time.

"After I got the notes I made inquiry before I approved them. I wrote to Senator Sullivan and Mr. Brahaus at Billings. Senator Sullivan was a lawyer at Billings and well acquainted with all the farmers and men that signed the notes, and I considered him a good authority to pass on the value of the notes. Mr. Brahaus is a merchant at Billings, lived there for a good many years. I got a favorable reply from both of these men. Plaintiff's Exhibit 'C' is the letter I addressed to Mr. Sullivan and contains his reply right on the letter about these notes. It is dated February 3, 1925."

The foregoing, we think, sufficiently indicates the circumstances under which the note was purchased. No contention is now made that plaintiff did not pay full value for the note in suit.

The real issues in the case, as developed at the second trial, are thus stated by defendant in his brief, viz., "We think that it can fairly be said that just two principal questions are involved on this appeal; First, did the trial court rule correctly in permitting witness Howard to testify on behalf of the defendant, to a certain telephone conversation that he had with somebody relative to certain notes of which the one in suit here was one? Second: If the court did rule properly in admitting that evidence, was it of such a character as would convict plaintiff of bad faith in purchasing said note without first making an investigation?"

The telephone conversation referred to was offered by defendant as evidence of notice to plaintiff of defective title to the note in Smith and is the only evidence, if any, tending to prove such fact. The evidence in question was given over plaintiff's objection by defendant's witness A. J. Howard, a banker at Billings, who testified in part as follows:

"Sometime in the latter part of '24, I think in December, someone called on the telephone and I answered and asked if it was the Bank of Billings. I said it was, they said, this is the Meyer Milling Company talking.

"Q. Said what? A. Meyer Milling Company of Springfield talking.

"By Mr. Mann: Q. When was that, Mr. Howard? A. Latter part of 1924, I wouldn't be positive, but I think in December.

"Q. You were in the bank? A. I was in the bank.

"Q. You didn't call anyone over the telephone? A. No, sir.

"Q. Your telephone rang and you went to the telephone and answered it? A. Yes, sir.

"Q. And the voice on the phone said, this is the Meyer Milling Company? A. Of Springfield.

"Q. Did they say anything else towards identifying who was talking? A. I am not positive about that, if they did I don't remember.

"Q. Did you recognize the voice of that person? A. No, sir.

"Q. Had you ever had any conversation before that with the Meyer Milling Company? A. I am not sure, but it seems to me I had.

"By Mr. Hamlin: He is attempting to take the witness away before I am through cross-examining him.

"By Mr. Mann: I am trying to find if he recognized the voice. A. No, I didn't recognize the voice. . . .

"Q. What did they ask you, what question was remitted to you? A. They asked me about certain parties in our locality, about whether their notes would be good for certain amounts.

"Q. Do you know who the parties were? A. Well, there was a number of parties.

"By Mr. Mann: I object to leading the witness.

"Q. All right. A. Conrad Baum, and Strohfeld, and one or two of the Browns, and maybe some others.

"Q. Strohfeld, is that the defendant in this case? A. Yes, sir.

"Q. What answer did you give this party that was inquiring about the notes of these men? A. I told them that the notes would be good in my judgment if there was no strings to them.

"Q. If what? A. The notes in my judgment were good if there were no strings on them, that is the words I used.

"Q. Did the party at the other end of the line ask you what you meant by strings being on the notes? A. He did not.

"Q. Was that the end of the conversation? A. That was the end of the conversation."

Plaintiff's witness L. S. Meyer testified the Meyer Milling Company had about 30 employees at Springfield; that he handled the whole transaction about the notes; that he passed on the notes and that he made no calls and authorized no one to telephone Mr. Howard of the Bank of Billings; that if any such call was made it was without his authority or knowledge.

As long ago as the year 1888 the question of the admissibility in evidence of telephone conversations was before the Missouri Supreme Court. At that comparatively early day in the use of telephones, our Supreme Court said:

"A question arose incidentally at the trial upon the admission in evidence of a conversation held through the telephone between some one at the instrument in plaintiff's private office and the witness. It was admitted, though the witness did not identify the voice of the

speaker as that of either of the plaintiffs or their clerk. The courts of justice do not ignore the great improvement in the means of intercommunication which the telephone has made. Its nature, operation and ordinary uses are facts of general scientific knowledge, of which the courts will take judicial notice as part of public contemporary history. When a person places himself in connection with the telephone system through an instrument in his office, he thereby invites communication, in relation to his business, through that channel. Conversations so held are as admissible in evidence as personal interviews by a customer with an unknown clerk in charge of an ordinary shop would be in relation to the business there carried on. The fact that the voice at the telephone was not identified does not render the conversation inadmissible. The ruling here announced is intended to determine merely the admissibility of such conversations in such circumstances, but not the effect of such evidence after its admission. It may be entitled, in each instance, to much, or little weight in the estimation of the triers of facts, according to their views of its credibility, and of the other testimony in support, or in contradiction of it.'' [Wolfe v. Mo. Pacific Ry. Co., 97 Mo. 473, l. c. 481, 482.]

The Wolfe case is probably the most quoted authority on this question in this country. A yet earlier case, by the St. Louis Court of Appeals, also hold that courts will take judicial notice that telephones have become an ordinary medium of communication in business and that a response purporting to come from defendant, in answer to a telephone inquiry made by plaintiff over a wire connecting plaintiff's phone with that of defendant, is admissible in evidence. [Globe Printing Co. v. Stahl, 23 Mo. App. 451.] To the same effect are the following Missouri cases, i. e., Guest v. R. R. Co., 77 Mo. App. 258 (shipping orders by telephone to railroad agent); Star Publishing Company v. Warehouse Company, 123 Mo. App. 13, 99 S. W. 765 (call by a named person to a newspaper office in regard to advertising); Meeker v. Union Electric Company, 279 Mo. 574 (call by disinterested party to electric company's office in regard to wire trouble); Hood & Company v. McCune, 235 S. W. 158 (telephone order to purchase corn); Miller v. Phoenix Fire Ins. Co., 9 S. W. (2d) 672 (talk over telephone by a person giving his name as defendant's insurance agent in regard to insurance policy). The foregoing authorities establish beyond question, as the law of this State, the principle that telephone conversations, as a general rule, are admissible in evidence the same as conversations face to face. This view of the law prevails in other jurisdictions. [Gen. Hospital Society v. New Haven Rendering Co. (Conn.), 79 Conn. 581, 9 Am. & Eng. Ann. 168; McCarthy v. Peach, 186 Mass. 67, 1 Am. & Eng. Ann. Cases 801; Conkling v. Standard Oil Company, 116 N. W. (Ia.) 823; Gilliland v. Southern Ry. Co. (S. C.), 67 S. E. 20, 27 L. R. A. (N. S.) 1106; Wetmore v.

Hudson (Minn.), 183 N. W. 672; Theisen v. Detroit Taxicab Co. (Mich.), 166 N. W. 901, L. R. A. 1918D. 715; Union Const. Co. v. W. U. Telegraph Co. (Cal.), 125 Pac. 242; Knickerbocker Ice Co. v. Dairy Co. (Md.), 69 Atl. 405, 16 L. R. A. (N. S.) 746.]

But plaintiff takes the position that there is a marked distinction between those cases in which the witness calls a number or place of business by telephone and receives a reply purporting to come from the party called, or the representative of such party, and a case, such as here, wherein the witness is the party called and the party calling is unknown to the witness but represents himself to be a particular person, or representative of such person. We think the distinction is meritorious. According to our understanding, the rule of evidence, as applied to telephone conversations, is no different from the rule applicable to conversations between individuals when face to face. In either case, there must be some identification of the party with whom the conversation is held, indicating him to be the person whom he purports to be and some proof that he possesses the authority he purports to have. It is true such identification or proof may be established by circumstances. A principal may be bound by a conversation when a party uses the telephone, calls his number in the usual manner and is answered by a person who says he is the individual called or who answers the call on behalf of his principal at his principal's place of business. Under such circumstances, the presumption logically follows that the party answering is the party called and that he has authority to act or bind his principal as to the matter under consideration. But no such presumption may be fairly said to follow when conditions are reversed. When the party called must depend entirely upon the word of the party calling, as to his identity, the conversation is purely and simply hearsay, the same as a conversation with some unknown person face to face would be. [American Trust Co. v. Moore, 248 S. W. 983; Fougue v. Burgess, 71 Mo. 389.]

If the witness recognizes the voice, the conversation over the phone is, of course, held to be admissible. We have no such circumstance here. Mr. Wigmore, in his work on Evidence (1904) uses this language: "But if there is no recognition of voice, what can supply sufficient evidence to authenticate the antiphonal speaker? In a given case, no doubt, sundry circumstances (including other admissions, and the like) may suffice. But, apart from special circumstances, can any rule be laid down? No one has ever contended that if the person first calling up is the very one to be identified, his mere purporting to be A is sufficient, any more than the mere purporting signature of A to a letter would be sufficient. The only case practically presented therefore is that of B's calling up A and being answered by a person purporting to be A." [Art. 2155, Vol. 3, p. 2923.]

We have found the text as above quoted to have stated substantially, the rule followed in each case wherein this particular question has been fairly raised: Miller v. Kelley (Mich.), 183 N. W. 717; Carroll v. Parry, 43 App. Cas. (D. C.) 363, Am. Cas. 1916E. 971; Stearns Lumber Co. v. Howlett (Mass.), 157 N. E. 82, 52 A. L. R. 1125, l. c. 1143; Stewart v. Fisher (Ga.), 89 S. E. 1052; Gallager v. Singer Sewing Machine Co., 177 Ill. App. 198; Fred Miller Brewing Co. v. Jones, 190 Ill. App. 169; Mankes v. Fishman, 163 App. Div. 789, 149 N. Y. S. 228; Union Construction Co. v. W. U. Tel. Co., 125 Pac. 242; Williamson-Halsell Frasier Co. v. King (Okla.), 158 Pac. 1142; Homeopathic Hospital v. Chalmers, 94 Miss. 600, 157 N. Y. Supp. 1000.

The particular question has not been raised in this State, as we view the decisions.

In the case at bar the telephone conversation, according to the witness Mr. Howard, was in December, 1924. The uncontroverted evidence shows negotiations with plaintiff involving the note in suit and other notes were not commenced until the middle of January or early in February, 1925. The contract between plaintiff and Smith is, itself, dated February 3, 1925, and it was at about that time Mr. Meyer, representing plaintiff company says he first saw the note. If the telephone conversation occurred in December, it was before plaintiff had anything to do with the notes. We mention these facts merely as an indication of the danger of too liberal a view in the admission of telephone conversations. That such evidence should be received with caution has been pointed out in a number of cases, among them being Knickerbocker v. Dairy Co., supra, wherein it is said, "As it is a character of evidence which might be used improperly, courts should be careful in the application of the rule." [16 L. R. A. (N. S.), l. c. 757.] In any event, no party should be bound by a telephone conversation or any other conversation carried on with a person unknown to and unidentified in any manner by the witness or by circumstances. Especially is that true when the person with whom the conversation is held undertakes to act in regard to a matter not connected with the usual and ordinary business of the company, as here. The agency or authority to act in relation to the particular matter under advisement should necessarily be shown because just any clerk or employee would not be presumed to have such authority. [Barrett v. Magner, 105 Minn. 118, 117 N. W. 245; First National Bank v. Equipment Co. (Mo.), 285 S. W. 779.]

It is, therefore, our opinion that the telephone conversation in question was inadmissible. Holding that view, it seems unnecessary to discuss the point raised relative to the sufficiency of the statement of Mr. Howard over the phone as bringing notice to plaintiff of defect in the title to the note.

In the present trial of this case defendant assumed the burden of proving the title of Smith was defective, which he no doubt did abundantly prove. The burden of evidence was then shifted on plaintiff, whose evidence, heretofore indicated, clearly destroyed any presumption that it or its officers had knowledge of any infirmity, defect or fraud connected with the note in suit. The burden of proof then remained with defendant to furnish some substantial evidence that plaintiff did have actual notice of the fraud or at least that plaintiff was in possession of facts tending to show bad faith in taking the notes. The only evidence offered, tending to support that charge, was the telephone conversation which we have held to be inadmissible. There is nothing in this record to indicate defendant can produce evidence tending to prove his defense of notice. We are therefore of the opinion plaintiff was, and is, entitled to a directed verdict. [Downs v. Horton, 209 S. W. 595, 287 Mo. 414, 230 S. W. 103.]

It follows this judgment should be reversed and remanded with directions to enter judgment for plaintiff in the sum of $100 with interest from October 29, 1924, at the rate of eight per cent as provided by said note It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.