STAR    BOTTLING    COMPANY,    Respondent,    v. CLEVELAND  FAUCET  COMPANY,  Appellant.

### St. Louis Court of Appeals, December 17, 1907.

1. EVIDENCE: Telephone Communications: Contracts.   In an action for breach of contract, telephone communications respecting the making of the contract between plaintiff and defendant stand upon the same footing as conversations and are admissible in evidence.

2. ———: ———: ———: Prima-Facie Case.   In an action for violation of a contract where the evidence of the plaintiff's bookkeeper showed that he called up the defendant's place of business by telephone, that his call was answered and a conversation took place showing an agreement, this was prima-facie proof of the contract.

3. PRACTICE: Instruction: Assuming Fact.   An instruction is not open to the objection that it assumes the existence of a fact on the ground that the words "if the jury find from the evidence" are not repeated in connection with the fact to be found, after such words have already been used in the instruction, especially where another instruction requires the finding of such fact.

4. ———: ———: Telephone Communications. In an action for breach of a contract which the plaintiff testified was made by telephone communications with some one in the office of the defendant and the defendant denied the conversation testified to, an instruction offered by defendant to the effect that the finding should be for the defendant if the conversation was with some other person not authorized to make the contract, was properly refused because there was no evidence upon which to predicate it.

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

AFFIRMED.

*Lee W. Grant* and *P. B. Kennedy* for appellant.

(1)   Instruction number 1 was erroneous because there was not a ray of testimony to the effect that there was a contract for the delivery of five hundred drums. Plaintiff's own evidence tended to prove two entirely distinct and separate orders, made at different times and with different people.   The jury were misled in believing that if one contract was proved, i. e., the one hundred drum contract, that then the other was also proved. The authority of Miss Kist to call up plaintiff and take an order was not denied.   The afternoon conversation with a "male voice" rests on entirely another footing. Helm v. Railroad, 98 Mo. App. 424.   (2)   The first instructions assumed that the thirty-one drums were delivered under an alleged five hundred drum order, "after delivering thirty-one drums under said contract," and assumed also that there was a contract existing between the parties.   It is error for the court to assume as a fact, that which is disputed.   Dodd v. Guiseffi, 100 Mo. App. 311.   This instruction is also erroneous because it lumps two transactions together.   Under proper instructions the jury might be justified in finding that a contract was made for one   hundred drums, and also in finding under proper instructions that there was no contract for four hundred drums.

It ignored one of the defences.    Ormsby v. Insurance Co., 98 Mo. App. 371; Hanheide v. Transit Co., 104 Mo. App. 323.

F. A. & L. A. Wind and J. Wm. Taylor for respondent.

(1)    Although instruction I made no mention of the two different conversations, instruction I given for defendant did specifically mention them in connection with the deliveries thereafter made by defendant.    It was impossible for the jury to be deceived when reading them together.    Squires v. Kansas City, 100 Mo. App. 628; Chambers v. Chester, 172 Mo. 461; Johnson v. Railroad, 173 Mo. 307.    (2)    Defendant is bound by the apparent authority with which it vested Miss Kist.    The instructions given her, which were unknown to plaintiff, could not affect or modify her power to bind defendant.    McNichols v. Hammett & Nelson, 45 Mo. App. 446.

BLAND, P. J.—The action was commenced before a justice of the peace, in the city of St. Louis, and in due course was appealed to the circuit court, where on a trial *de novo* plaintiff recovered judgment, from which defendant duly appealed to this court.

Plaintiff and defendant are corporations.    Plaintiff is in the bottling business.    Defendant's business is the manufacture and sale of liquid carbonic acid gas.    The complaint states, in substance, that on November 19, 1904, plaintiff purchased from defendant, five hundred fifty-pound drums of liquid carbonic acid gas at one cent per pound, to be delivered at once by plaintiff at defendant's warehouse, situated at the corner of Seventh street and Cass avenue, in the city of St. Louis; that defendant delivered thirty-one of said drums but failed and refused to deliver the remainder,

by reason whereof plaintiff was damaged in the sum of $469.

Albert Olsen, plaintiff's bookkeeper at the time, testified that between nine and ten o'clock a. m., of November 19, 1904, he was called up by telephone and a female voice informed him the price of gas was one cent per pound, and that they were the Cleveland Faucet Company; that being so instructed by plaintiff's manager, he replied that plaintiff would take one hundred fifty-pound drums, said, "put us down for a hundred drums," and the response was, "All right;" that in the afternoon of the same day, by direction of plaintiff's manager, he called defendant up over the telephone and was answered by the same female voice that had called him in the forenoon; that he asked for Mr. Williams, the general manager of defendant company, and a male voice then answered, and he (witness) asked if he would "take an order for four hundred fifty-pound drums," and he said he would; that he asked how soon the drums could be delivered and received the reply, "Right away;" that he told him to deliver the gas at plaintiff's warehouse at the corner of Seventh street and Cass avenue.    The evidence of William Freudenau, secretary and manager of plaintiff company, corroborates Olsen's testimony, in respect to the telephone conversation about the purchase of the gas.    Thirty-one fifty-pound drums were delivered from time to time by defendant to plaintiff.    Plaintiff claims these deliveries were made on the contract.    Defendant contends they were made on special orders from plaintiff and not on any contract defendant had with plaintiff.    Defendant denied that it ever agreed to deliver plaintiff one hundred, or four hundred, or five hundred drums of gas. In regard to the telephone communications, Miss Antionette Kist testified that in November, 1904, she was in the employ of defendant company, and called plaintiff up by telephone on the morning of the nineteenth,

and asked if they needed any gas, quoting it at one cent per pound; that the person who answered said, "Yes, we want one hundred drums;" that she replied, "we cannot let you have a hundred drums. We can only send you gas as you need it;" that later in the day they (plaintiff) called up by telephone and wanted to place an order for one hundred drums; that she again answered, "We cannot fill an order for a hundred drums; will just fill the orders as you need it;" that they said "All right," and hung up the receiver.

H. R. Williams, manager of defendant company, testified he had no conversation over the telephone, or otherwise, with any of plaintiff's officers or agents, November 19, 1904; that four or five days later and after the first delivery of gas to plaintiff, he was called up over the telephone by plaintiff and asked "where their gas was;" that he asked how much they wanted and they replied, "five hundred drums;" that he said, "We did not have any agreement to deliver five hundred drums. We never agreed to give you five hundred drums. We cannot do it, it is impossible. We will give you the gas just as needed at market price." Williams testified that all orders for the sale of gas were referred to him. He was then asked the following question: "Did any one else have power to pass on them; at that time did any one else pass on orders?" Plaintiff's counsel objected and the objection was sustained, to which ruling defendant saved an exception, but failed to get in the record what the witness' answer would have been if he had been permitted to answer.

The following correspondence was had between the parties:

"St. Louis, Mo., Dec. 16, 1904.
"Cleveland Faucet Company,

"Gentlemen:—You sold us 500 drums of gas at 1 cent per lb.—50-lb. drums—to be delivered to our ware-

house, northeast corner of Seventh and Cass avenue, you to commence delivery at once. When, a few days after we were out of gas, we notified you to commence delivery and you sent us 10 drums and stopped. Then again on the 7th of December you sent us 5 drums. Now running short, we again have to call upon you to make delivery. If it is your desire to make delivery of the gas as required for our use, we have no objection to giving you this privilege, but we understood that you desired to make delivery of the whole amount at once. Send us supply to our factory and let us hear your further wishes regarding this matter.

"Respectfully yours,
"THE STAR BOTTLING CO.,
"WM. FREUDENAU, Gen'l Manager."

"St. Louis, Mo., Dec. 17, 1904.
"Star Bottling Co.,

"Gentlemen :—We are in receipt your valued favor of the 16th inst., and note that you are under the impression that we sold you 500 50-lb. drums carbonic gas at 1 cent per lb. In this you are entirely mistaken, as the only conditions on which we have ever sold gas at present prices are as follows:

"We will supply you at 1 cent per lb., with what gas you need in your own plant as long as the price remains at that figure. If the price continues at 1 cent per lb. long enough to enable you to use 500 drums in your own plant we will supply you as you need the gas. Under no consideration will we furnish you with a large stock. Neither will we agree to sell you gas to be resold to other concerns.

"Trusting we have made our position on this matter clear to you, we beg to remain,

"Yours very truly,
"THE CLEVELAND FAUCET CO.
"Per H. R. WILLIAMS, Manager."

In response to telephone orders, or requests from plaintiff, defendant delivered ten drums of gas November twenty-second; five drums December seventh; six drums December fifteenth, and ten drums January 9, 1905, but made no other deliveries.    Prior to November nineteenth, the market price of gas was three cents per pound; after January twenty-ninth or thirtieth, 1905, the market price was three cents per pound and plaintiff was obliged to pay that price.

The court gave the following instruction for plaintiff:

"The court instructs the jury, that if the jury find and believe from the evidence that defendant, on or about November 19, 1904, agreed to sell and deliver to plaintiff five hundred drums of carbonic acid gas— containing fifty pounds to the drum—at one cent per pound, and after delivering thirty-one drums under said contract refused to make further deliveries of gas, then the jury will return a verdict for the plaintiff."

Verdict and judgment for plaintiff, from which defendant appealed.

Defendant contends that instruction No. 1 given for plaintiff is erroneous, for the reason plaintiff failed to make out a prima-facie case; that there is no evidence of a contract to deliver five hundred drums of gas; and for the further reason that the instruction assumes the thirty-one drums delivered were delivered under a contract to deliver five hundred drums.    The telephone communications between plaintiff and defendant stand upon the same footing as conversations between the parties and were admissible   in   evidence. [Globe Printing Co. v. Stahl, 23 Mo. App. 457; Guest v. Railroad, 77 Mo. App. 258; Wolfe v. Railroad, 97 Mo. 473, 11 S. W. 49.]    The evidence of Olsen, plaintiff's bookkeeper, in regard to the telephone conversation with defendant, tended to prove that defendant agreed to deliver plaintiff five hundred drums of gas,

and hence made out a prima-facie case, entitling plaintiff to have its evidence submitted to the jury. The point that the instruction assumes the thirty-one drums delivered were delivered under a contract, we do not think is well taken. The first and second clauses of the instruction are conjoined and as the first requires the jury to find from the evidence that a contract was made, they were impliedly instructed to find from the evidence that the thirty-one drums were delivered under said contract. The instruction is subject to criticism for failing to repeat after the conjunction "and," connecting the first and second clauses of the instruction, "if the jury find from the evidence that." But with the following instruction (given for defendant) before them, it is not possible that the jury could have believed or inferred that the court instructed, as a matter of law, that the thirty-one drums delivered were delivered under a contract to deliver four hundred drums of gas; to-wit:

"1. If the jury find and believe from the evidence, that the deliveries of carbonic acid gas made by defendant to plaintiff after November 19, 1904, were not shipped by plaintiff in partial fulfillment of either the alleged one hundred drum order, or the alleged four hundred drum order, but were made by defendant to fill individual orders given by plaintiff at that time, then the court instructs the jury that you must find in favor of the defendant."

2. Defendant asked and the court refused to give the following instruction:

"The court instructs the jury that if they find and believe from the evidence that the person who is said to have accepted an order from plaintiff in behalf of defendant, for four hundred drums of gas was not H. R. Williams, local manager of the defendant, and was not authorized to accept such an order, and that such an order, if accepted, was never reported to the manager

and approved by him, then they will not assess any damages against defendant for failure to deliver said four hundred drums of gas."

One of the issues was whether Williams, the manager of defendant company, accepted plaintiff's order for four hundred drums of gas. Plaintiff's evidence was not positive and direct that he did, and Williams swore positively that he had no communication whatever with plaintiff on the day the order is said to have been communicated and accepted over the telephone. The telephone was in defendant's office, was its private property and under its exclusive control and could not have been used by an outsider except by its permission, hence it is not at all probable that an imposter secured the use of the telephone to accept plaintiff's order, and the burden was on the defendant company, who had the possession, management and control of the telephone, to show affirmatively that the order was accepted by an unauthorized person or not accepted at all. It undertook to meet this issue by showing that it was not accepted at all, not that some outsider was given permission to use the telephone and. accepted the order without authority from defendant. There was, therefore, no evidence upon which to predicate the instruction.

No reversible error appearing, the judgment is affirmed. All concur.