NEW YORK LIFE INS. CO. v. SILVERSTEIN.

No. 9166.

Circuit Court of Appeals, Eighth Circuit.

Dec. 1, 1931.

Richard S. Righter, of Kansas City, Mo. (Lathrop, Crane, Reynolds, Sawyer & Mersereau and George J. Mersereau, all of Kansas City, Mo., on the brief), for appellant.

Myer M. Rich, of Kansas City, Mo. (Friedberg & Rich, of Kansas City, Mo., on the brief), for appellee.

Before STONE, KENYON, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

The appellee, Anna Silverstein, brought this action against the appellant, New York Life Insurance Company, to recover upon a life insurance policy issued by that company upon the life of Max Silverstein, appellee's husband. The parties will be referred to as they appeared in the lower court. The petition is in conventional form for actions of this character, alleging that the insured died December 3, 1928; that at the time of his death all the premiums accrued and due had been duly paid; and that the insured had complied with all the conditions and provisions of the policy to be kept and complied with by him. The defendant answered, denying that the insurance policy was at the time of the death of the insured in full force and effect, and alleging that the premium due thereon September 28, 1928, had not been paid, and that by reason of the failure to pay the premium the policy had lapsed. At the close of the testimony the defendant moved for a directed verdict, which was denied, and the case was submitted to the jury upon instructions, to certain of which the defendant excepted. The jury returned a verdict in favor of the plaintiff, and judgment being entered thereon, the defendant has appealed to this court.

The issues of fact as tried in the lower court were whether or not the premium which became due September 28, 1928, had been paid so as to prevent the lapse of the policy prior to the death of the insured, or, if not, whether the defendant by its acts was estopped to deny such payment. The policy was solicited by one Sam Toub, an agent of the defendant, working for its Kansas City branch office, and was delivered to the insured about the 27th of March, 1927, although it is dated April 1, 1927. The insured died December 3, 1928. At the time of delivery the agent took a note from the insured for the first six months' premium. By the terms of the policy the premiums were payable semiannually, and there is no dispute but that the first three semiannual premiums were paid. The policy recites that: "This policy takes effect as of the 28th day of March, 1927, which day is the anniversary of the policy."

Over the objection of defendant, the court permitted plaintiff to testify as to a telephone conversation which she claims she had with the Kansas City branch office of the defendant on the 26th of November, 1928, concerning the payment of premiums. She testified that her husband had a very bad attack of sickness about 1 o'clock a. m. November 25, 1928, and that on the next day she had a conversation over the telephone with some one in the defendant's office. She testified that she first looked in the telephone directory, found the name of the defendant and the number of its telephone, and called the number, using a dial telephone. At the time, the defendant employed in its Kansas City branch office one telephone operator and about twenty clerks. Plaintiff was unable to identify either of the persons with whom she talked. She testified in substance as to

this conversation as follows: "I asked for Mr. Toub. They said Mr. Toub was out and they didn't know when he would be in. I asked to talk to somebody about the premium and so somebody came on the line. A man came on the line and he says, 'Wait a minute.' I asked him if the premium was paid up and he came on the phone and he said, 'Yes, it is all right.'"

On cross-examination she testified as follows: "I asked when Mr. Toub would be in and the clerk over the phone said she couldn't tell me. I asked to talk to somebody in regard to the premium, and a man answered the phone and I said, 'This is Mrs. Silverstein talking, and I want to know if Mr. Silverstein's premium is paid.' He said, 'All right, wait a minute.' He came back and said, 'It is all right.'"

It is strenuously urged that the admission of this testimony was prejudicial error. Telephone companies are common carriers of messages, and telephone systems are now an established part of the means of communication constantly used in modern business and social life. Where a face to face conversation between a witness and another person would be admissible in evidence, a conversation between such persons over the telephone is admissible, provided the identity of the person with whom the witness speaks is satisfactorily established. Proof of identity is usually established by the witness' recognition of the voice of the person with whom he speaks. But the identity of the speaker may be established by other means, and where a witness calls the office of an established business on the telephone, his testimony as to the conversation had with the person answering the telephone and purporting to speak on behalf of the party is competent even though the witness does not recognize the voice of the person speaking and is not able to identify the speaker. This is based upon the presumption that one who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, has authority to speak for him. The trend of well-reasoned modern authority is well stated by the author of the article on Evidence in 22 C. J. 193, as follows: "The rule requiring the identity of the speaker to be established is subject to a well recognized exception to the effect that, where the witness called the office of a party on the telephone, testimony as to a conversation had with a person answering the telephone and purporting to do so on behalf of the party is competent, although the witness did not recognize the voice of the

person who spoke and is unable to identify the speaker, for the reason that one who answers a telephone call from the place of business of the person called for, and undertakes to respond as his agent, is presumed to have authority to speak for him in respect to the general business there carried on and conducted."

See, also, American & British Mfg. Corp. v. New Idria Quick Silver Mining Co. (C. C. A.) 293 F. 509; Wolfe et al. v. Missouri Pacific Ry. Co., 97 Mo. 473, 11 S. W. 49, 3 L. R. A. 539, 10 Am. St. Rep. 331; Star Bottling Co. v. Cleveland Faucet Co., 128 Mo. App. 517, 109 S. W. 802; Meyer Milling Co. v. Strohfeld, 224 Mo. App. 508, 20 S. W.(2d) 963; Meeker v. Union Electric Light & Power Co. (Mo. Sup.) 216 S. W. 933; J. E. Hood & Co. v. McCune (Mo. App.) 235 S. W. 158; Kansas City Star Co. v. Standard Warehouse Co., 123 Mo. App. 13, 99 S. W. 765; Gardner v. Hermann, 116 Minn. 161, 133 N. W. 558; Gilliland v. Southern R. Co., 85 S. C. 26, 67 S. E. 20, 27 L. R. A. (N. S.) 1106, 137 Am. St. Rep. 861; Kiviniemi v. Hildenbrand, 201 Wis. 619, 231 N. W. 252.

The defendant offered no testimony on this point, so that it stands without dispute that the conversation in fact occurred, and under the authorities above cited, it is presumed that the person with whom the plaintiff held this conversation had authority to speak for the defendant on the subject inquired about. There was, therefore, no error in admitting this evidence.

In addition to the question whether the semiannual payment due September, 1928, had been paid, the court submitted to the jury the question as to when the policy took effect. The application, which was made a part of the policy, provides that: "It is mutually agreed as follows: That the insurance hereby applied for shall not take effect unless and until this policy is delivered to and received by the applicant and the first premium paid in full during his lifetime."

Plaintiff in her petition alleged that on or about the 1st day of April, 1927, the defendant executed and delivered to the insured its policy of insurance whereby it insured the life of said Max Silverstein in the sum of $5,000; that the insured up to the time of his death had paid all the premiums accrued and due on the policy, and had in all respects complied with the conditions and provisions of the policy. The policy, as has already been noted, recites on its face that it takes effect March 28, 1927. In the ap-

plication which was signed by the insured, in question 8, under the heading "Additions or Amendments (For Home Office use only)," appears the following: "Insurance takes effect as of the 28th day of March 1927, instead of as requested in the application."

The application also contains provision as follows: "That by receiving and accepting said policy, any additions or amendments hereto which the Company may make and refer to in Question 8 above entitled 'Additions or Amendments' are hereby ratified."

■ It was the usual course and practice of the defendant to allow its agents to take notes payable to their order from the insured for the first premium. The company accepted cash and nothing else in payment of the succeeding premiums, but when an agent took a note for the first premium the premium was treated by the company as paid and the agent was held personally responsible for the payment of the note. In this case the insured gave the agent a note for the first premium payable to the agent. This note was collected by the agent from the insured, and the agent in his accounting to the insurance company paid the amount of the note July 11, 1927, although the insurance company charged him with the premium on the 28th of March, 1927. A witness for the defendant testified as to this practice as follows: "They do permit the agent to take a note drawn up payable to his order, and he assumes the sole responsibility for the payment of the premium. If he doesn't collect the note, nevertheless he owes the company. That is for the first premium only. He has authority to make collection of the first premium only according to his contract."

So far as the company was concerned, this premium was paid when the note was given. The company accepted its agent for the liability and had no claim on the insured; in fact, the note was not made payable to the company, but to the agent. The agent not having paid the company the premium in cash until July 11, 1927, the court submitted to the jury the question as to when the policy became effective, and stated in its instructions that if the first premium was not paid until July 11, 1927, the policy would take effect from that date, and that the payment of succeeding premiums would renew it every six months, reckoning from July 11, 1927, and, therefore, the payment of three semi-annual premiums would keep the policy alive until January 11, 1929. It appears without dispute that the policy was delivered March 27, 1927, and the premium was paid by de-

livery of the note to the agent Toub. The court was, therefore, in error in submitting this issue to the jury. Dodd v. Ætna Life Ins. Co. (C. C. A.) 35 F.(2d) 673; Fidelity & Casualty Co. v. Willey (C. C. A.) 80 F. 497; Smith v. Provident Sav. Life Assur. Society (C. C. A.) 65 F. 765; Miller v. Insurance Co., 12 Wall. 285, 20 L. Ed. 398.

■ But there is a further reason why this instruction was erroneous. The court in effect told the jury that if they found the premium was not paid until July 11, 1927, the payment of the premium on that date would carry the policy forward for six months, and the payment of the premium for another six months would carry the policy through a further six months' period, and so on. However, the policy contains the following definite provision: "This contract is made in consideration of the payment in advance of the sum of $94.35, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this policy for the period terminating on the 28th day of September, 1927, and of a like sum on said date and every six . calendar months thereafter during the life of the insured."

As has already been noted, the policy further provides on its face that: "This policy takes effect as of the 28th day of March, 1927, which day is the anniversary of the policy."

There is no real inconsistency between these above-quoted provisions in the policy and the provision in the application to the effect that the policy should not take effect until its delivery and the payment of the first premium. The policy definitely provides that the premiums following the first shall be due on definite dates, or at the expiration of definite periods. These contract provisions must control. McCampbell v. New York Life Ins. Co. (C. C. A.) 288 F. 465; McConnell v. Provident Savings Life Assur. Society (C. C. A.) 92 F. 769; Sellars v. Continental Life Ins. Co. (C. C. A.) 30 F.(2d) 42.

Even had the policy not become effective until July 11, 1927, still the subsequent premiums became due on the dates provided in the policy, and if the premium due September 28, 1928, was not paid on that date, or within the thirty days' grace period allowed, the policy by its terms lapsed. This position is further enforced by the fact that the insured obtained the benefit of a lower rate for the insurance by reason of its having taken effect at the earlier date, to wit, March 28, 1927, rather than at some later date, de-

pending on payment of the first premium. Johnson v. Mutual Benefit Life Ins. Co. (C. C. A.) 143 F. 950; McCampbell v. New York Life Ins. Co. (C. C. A.) 288 F. 465.

The lower court instructed the jury in effect that even if the jury found that the third semiannual premium had not been paid, yet if they found that but for the fact of the alleged telephone conversation, Mrs. Silverstein or her husband would have paid the premium, then the defendant would be estopped to deny that the premium was paid. The giving of this instruction is assigned as error. This third semiannual payment had either been paid or it had not been paid. If it had been paid the policy was in effect at the time of this alleged telephone conversation. If, however, it had not been paid, then the policy had lapsed, and the only right left to the assured, under the terms of the policy, was the right to apply for reinstatement. The provision for reinstatement is as follows: "This policy may be reinstated at any time within five years after default upon written application by the insured and presentation at the Home Office of evidence of insurability satisfactory to the Company and upon payment of overdue premiums with five per cent interest from their due date."

As has been observed, this conversation took place November 26, 1928. Plaintiff testified with reference to the insured's state of health as follows: "My husband had a very bad attack on the 25th of November. He took very sick about one o'clock that night, and he had acute indigestion, and I thought he was dying."

Again she testified: "My husband took very sick the night of the 25th, and on the 26th, in the morning, I called up the company and asked for Mr. Toub. I got very nervous and scared, and I asked for Mr. Toub."

The insured died December 3d. The company's form of application for reinstatement required the insured, among other things, to answer three interrogatories. So far as here pertinent, they are as follows:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this Policy was issued? (If not, give details.)

"2. Within the past two years have you had any illnesses, diseases or bodily injuries or have you consulted or been treated by any physician or physicians?"

Now it affirmatively appears that the insured could not have stated that he was in the same condition of health as he was when the policy was issued, nor could he have stated that within two years he had not had any illness, diseases, or bodily injuries, and it affirmatively appears by this record that the insured could not have presented evidence of insurability satisfactory to the company. It follows that if plaintiff was misled by her alleged telephone conversation, still no injury resulted, and injury is an indispensable element of an estoppel. As said by this court in Central Improvement Co. v. Cambria Steel Co., 210 F. 696, 718: "The indispensable elements of an 'estoppel in pais' are: (1) Intentional or reckless misrepresentation of a known and material fact inconsistent with the subsequent claim of him who makes the misrepresentation; (2) ignorance of the truth and absence of equal means of knowledge of it by the party who claims the estoppel; (3) action by the latter induced by the misrepresentation; and (4) injury to the latter if the truth is permitted to be proved."

The lower court erroneously assumed that the policy could have been made effective at this time by a payment of the premium, but it must be borne in mind that neither the plaintiff nor the insured was privileged to pay this premium. The only right which either of them had was to apply for a reinstatement of the policy. What would have resulted had plaintiff not received assurances that the premium had been paid is not a matter of speculation, because it affirmatively appears that at no time subsequent to this conversation could the insured, or the plaintiff, have presented evidence of insurability satisfactory to the company. There being no substantial evidence to sustain the issue of estoppel, the court erred in its instruction submitting that issue.

It is strenuously urged that there was not sufficient evidence to warrant the court in submitting to the jury as an issue of fact the question of the payment of the premium due September 28, 1928, but as the case must be reversed for the errors in the instructions already discussed and a new trial must be ordered, it is not deemed necessary to review the evidence on this issue, as on retrial the evidence may be different from that submitted on the last trial. We therefore refrain from expressing any opinion on this issue.

Because of the errors in the instructions herein pointed out, the judgment of the lower court must be and is reversed, and the cause is remanded with directions to grant the defendant a new trial.