94

## W. T. COWAN, Inc., v. WAGSHAL.
### No. 353.

Municipal Court of Appeals for the

District of Columbia.

May 22, 1946.

P. Michael Cook, of Washington, D. C. (L. Harold Sothoron, of Washington, D. C., on the brief), for appellant.

Philip Wagshal, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, Associate Judge.

CAYTON, Chief Judge.

Plaintiff sued to recover the value of a shipment of canned ham allegedly damaged or lost through the negligence of defendant, a motor carrier. There were two trials of the case. The first resulted in a finding for defendant; but on plaintiff's motion this finding was vacated and a new trial granted. A different judge conducted the second trial and found in favor of plaintiff for the full amount of his claim. Defendant brings this appeal.

Plaintiff's evidence revealed that he was in the food distribution business; that five cases of canned hams were shipped to him from New York City in a truck of defend-

ant company and were tendered to him at his place of business in good condition; that the shipment was labeled "Perishable—canned meat—must be kept refrigerated"; that his own refrigerators being full he asked defendant driver to deliver the shipment to a party named Conard for storage. He called the telephone number of defendant company and asked for a Mr. Gray who was in charge of deliveries and talked with him or someone else, and asked such person to have the shipment delivered to Conard, and that such person agreed to have the delivery made; that at the direction of this person he paid the driver $2.59 for the original delivery; that several weeks later he discovered that the hams had never been delivered to Conard, and called defendant's office and complained to Gray about the nondelivery; that Gray told him that the driver had misplaced the address for the reconsignment and the shipment had, therefore, been sent to the terminal warehouse and placed in cold storage and that it would be delivered to plaintiff; that after he had talked to Gray some six times about it, the hams were finally delivered to him but in a damaged and completely worthless condition; that all five cases had been opened and some hams were missing; that the shipment was six short and others were "oozing" which fact was certified by the driver's signature on a slip. Plaintiff admitted that he paid no charges for the reconsignment of the goods to the Conard warehouse.

Defendant's driver, who was in court on a subpoena from plaintiff, was after some discussion called by plaintiff on rebuttal and testified that he did not remember delivering the hams to plaintiff; that he was not allowed to sign receipts for goods; and that he was sure he had not signed for this shipment.

The manager of defendant company, who at the time in question was in charge of the eastern territory, testified that the records of his company did not show that the shipment had ever been taken from plaintiff's place of business by his company; that it was a positive rule of the company that any reconsignment must be in writing; that the driver was under positive orders either to make delivery and secure a receipt, or return the goods to the terminal.

█ Appellant claims that the judge who heard the first suit erred in granting a new trial, but it is well settled that the disposition of a motion for new trial is not subject to review unless an abuse of discretion is shown.[1] Without detailing the circumstances we are satisfied that appellant has wholly failed to show any abuse of discretion in the ruling here involved.

█ Appellant contends that the telephone conversation between Wagshal and the representative of appellant company relating to the reconsignment was inadmissible. But the evidence shows that Wagshal called the telephone number of defendant company and asked for Mr. Gray, and arranged for the reconsignment with the person to whom he talked; though he was not positive that that person was Gray. He admitted on cross-examination that he knew Gray very well, that he had talked with him on the telephone many other times, previously and subsequently, and instantly recognized his voice on those occasions. He also said that when he talked to Gray it was mostly in the afternoon and that this alleged conversation was also in the afternoon. This was contradicted by defendant's evidence which was that Gray was employed as a night dispatcher, working from seven at night until seven in the morning. As to this, however, Wagshal also testified that he talked with Gray again on the telephone when he called to notify defendant company that Conard had not received the shipment; that he recognized his voice and discussed with him the redelivery. Under these circumstances there would seem to be no question that the telephone conversation was admissible.

We do not say that the judge was required to accept the Wagshal version as true; but we do say that the conversation was admissible.[2]

---

[1] Peay v. Parks, D.C.Mun.App., 42 A.2d 250; Palmer Construction Co. v. Patouillet, D.C.Mun.App., 42 A.2d 273; Franklin v. Chas. C. Schulman Co., D.C.Mun. App., 31 A.2d 871.

[2] Campbell v. Willis, 53 App.D.C. 296,

Appellant argues that no contract of reconsignment was established. According to the evidence the plaintiff Wagshal did make such an agreement by telephone with an agent of appellant company who authorized the driver to carry out the agreement. Appellant claims it was a rule of the company that any order for reconsignment must be in writing, and that no such writing appears in the company's files; that if the goods were returned to the terminal a notation would have been made on a manifest or delivery sheet and the item entered for later delivery, and that there was no record thereof in the company files. It will be seen that such evidence was merely negative in character and sought to overcome plaintiff's showing by relying on defendant's business custom. We think there was ample evidence from which the judge could properly find that there was an agreement for redelivery.

Appellant next contends that, even if made, the agreement was without consideration. With this contention we cannot agree. When, according to plaintiff's version, he engaged defendant to redeliver the shipment, there was an implied agreement that he would pay the reasonable cost of such redelivery. That of course was ample legal consideration; and the consideration is no less valid merely because the charge was not paid in advance.

Finally, appellant contends that being a mere gratuitous bailee it was liable only for gross negligence. As we have already said, defendant did not enjoy such a preferred status. It was clearly a bailee for hire. But even if its contention in that respect could be sustained we think it would still be liable. Despite the labels which gave plain warning that the merchandise was canned meat and perishable and must be kept refrigerated, when it was ultimately returned to plaintiff all five cases had been opened, some cans were missing and all the rest completely spoiled. Unexplained as it was, we think this circumstance would have supported a charge of gross negligence.

Affirmed.

290 F. 271; New York Life Ins. Co. v. Silverstein, 8 Cir., 53 F.2d 986; John Alt Furniture Co. v. Maryland Casualty Co.,

8 Cir., 88 F.2d 36; 7 Wigmore, Evidence, 3d Ed. 1940, § 2155(c).